# JULY TERM, 1904.

*PRESENT:*

Hon. WILLIAM A. JOHNSTON, Chief Justice.
Hon. WILLIAM R. SMITH,
Hon. EDWIN W. CUNNINGHAM,
Hon. ADRIAN L. GREENE,
Hon. ROUSSEAU A. BURCH, } Justices.
Hon. HENRY F. MASON,
Hon. WILLIAM D. ATKINSON,

| 69 | 587 |
| 81 | 330 |
| 81 | 332 |
| 81 | 334 |

D. E. Bowden v. The City of Kansas City, Kansas.

No. 13,366. (77 Pac. 573.)

SYLLABUS BY THE COURT.

Cities and City Officers—*Liability for Injuries to Firemen.* A municipal corporation is performing a ministerial public duty in maintaining a fire station, and is liable in damages to an employee for personal injuries resulting from the neglect of the corporation to furnish him a reasonably safe place in which to work.

Error from Wyandotte court of common pleas; William G. Holt, judge. Opinion filed July 7, 1904. Reversed.

*True & Sims,* for plaintiff in error; *Keplinger & Trickett,* of counsel.

*J. W. Dana,* city counselor, and *M. J. Reitz,* city attorney, for defendant in error.

The opinion of the court was delivered by

Greene, J. : The plaintiff prosecutes error from a judgment sustaining a demurrer to his petition. The material facts alleged in the petition, which present

the question discussed in this opinion, briefly sum-
marized, are that the defendant, a city of the first
class, maintains a fire department and fire stations;
that plaintiff was in charge of station No. 3, in which
were kept a hose-cart and horses for drawing it; that
it was his duty to clasp the collar on the horses when
they dashed from their stalls to the tongue of the hose-
cart upon the alarm of fire; that the floor between
where the horses stood and the tongue of this cart,
which had been laid with wooden blocks, had become
so worn and rotten that a large hole had been made
in the runway, which the city had negligently
permitted to remain for a long period of time, not-
withstanding the fact that the attention of the fire
marshal had frequently been called to it and he had
repeatedly promised to cause it to be repaired; that
the city knew the floor was out of repair and had neg-
ligently omitted to put it in order; that on the occa-
sion of plaintiff's injury he was in the discharge of
his duties when a fire-alarm was turned in and one of
the horses made a dash for the tongue of the hose-
cart, where plaintiff was waiting to receive it to clasp
the collar of the harness, the horse stumbled into the
hole, falling heavily against plaintiff, which resulted
in serious injuries, for which he sought to recover
damages in this action.

It is contended that the petition does not affirma-
tively show that the city had notice of the defective
and dangerous condition of the floor, and that it af-
firmatively shows that the plaintiff assumed the risk
of injury which would probably result from such
defective condition of the floor. Neither of these
contentions is well taken. In some particulars the
petition is not very specific in its allegations, but it is
not fatally defective in either of the respects men-

tioned. It is plain that the court below did not sustain the demurrer on either of these grounds.

The important question, and the one to which counsel have directed their attention, is, Can a municipal corporation be made to respond in damages to the plaintiff for injuries sustained through its negligence in not furnishing him a reasonably safe place in which to perform his duties as an employee in one of its fire stations? Non-liability is asserted on the ground that municipal corporations are created by the state to assist in the administration of its laws ; that the maintenance of a fire department is a governmental duty, and in the performance of such duty cities are limited sovereignties, or miniature states, and are exempt from all liability for the misfeasance of their agents. Whether the corporation in this instance was acting as a governmental agency in a public capacity representing the inhabitants of the city, or in its private corporate capacity, is not a material question ; in either instance it was acting within the scope of its delegated authority. It possessed the power to provide and maintain a fire department for the protection of the property of the inhabitants, and in this respect it was performing a public duty. In order that this power might be more effectually executed the office of fire marshal was created. The mayor and council were given power to appoint such officer, prescribe his duties, provide for his salary, and control him in the discharge of such duties as were imposed upon him, and hold him responsible for the manner in which he should perform them. Therefore, the fire marshal, while so acting, was the agent of the city and not an officer of the state.

In determining the necessity for a fire department, the number and location of fire stations, the kind,

quality and number of fire-extinguishers, and all matters involving the efficiency of such department, the council are in the exercise of their legislative power, judgment, and discretion. In the performance of such duties the questions of non-feasance or misfeasance are not subjects of judicial inquiry. Having, however, determined these questions, the execution of the work and the management of its property is ministerial. In determining the locality, width and grade of streets, and in establishing a system of sewers, and the kind and location of the pipes therefor, the corporation exercises its legislative authority; in the one instance as a government instrumentality; in the other, in its public capacity, as benefactor of the inhabitants. In either case the city is liable to property owners for injury to their property occasioned by the negligent execution of the plan.

The case of *City of Toledo v. Cone*, 41 Ohio St. 149, 163, was an action to recover damages for personal injuries sustained by the falling of an embankment supporting a vault in the city cemetery. The court said:

"We think it is evident from these statutory provisions that the trustees of the cemetery in question were elected by the people of Toledo, to take charge, as their agents, of the cemetery property, and acted in that behalf in subordination to and subject to removal by the council of the corporation. The improvement or repair of the city vault, through their agency and that of the superintendent, was not a legislative or governmental act on the part of the city, but was merely the discharge of a ministerial duty, such as the city performs in repairing or improving its streets, sewers, and wharves. It lay within the legislative capacity, judgment and discretion of the city to provide a cemetery for the burial of the dead, and to build requisite vaults; but, having become the

owner of such property, the city in managing it was held to the same degree of care in preventing damage to others as would be required of natural persons. By section 8 of the act of May, 1869, municipal corporations are made capable of acquiring, holding and possessing property, real and personal. Having such power, there would seem to be no more valid reason for exempting them from liability for private injuries caused by the improper management of their property than for exempting private corporations and natural persons under like circumstances."

In the case of *Donahoe v. Kansas City*, 136 Mo. 657, 670, 38 S. W. 571, 574, which was an action to recover damages for injuries sustained by the plaintiff while engaged as a laborer in digging a trench for a sewer, the allegations were that the city and its duly appointed representatives in charge of the work negligently and carelessly failed to brace, shore up and protect the walls of the trench sufficiently to make it a reasonably safe place for plaintiff to work. The court said :

"It was a duty which defendant owed to plaintiff to furnish him a reasonably safe place in which to work. The superintendent of streets as well also as the foreman in charge of the work knew or might have known, had they discharged their duty, the unsafe condition of the bracing in this instance. 'This duty is personal to the master, and if entrusted to a foreman, the negligence of the foreman is the negligence of the master.'"

The court stated that the building of a system of sewers is for the private benefit of the corporation, and this may have had some influence upon the court in determining the question of the liability of the city. This question will be referred to later.

Mr. Jones, in his work on Negligence of Municipal Corporations, section 141, says :

"But as soon as the corporation has determined to

construct a public work, it enters upon an undertaking which, in all its details, should be subordinated to the rule requiring the use of care, for the work is then ministerial. There has been much discussion whether a municipal corporation will be liable for a defect in the plan of a public work, and many authorities have held broadly that it would not. The word 'plan,' however, in the cases, as is clearly shown in a recent case in the United States supreme court (*Johnston v. District of Columbia*, 118 U. S. 19, 6 Sup. Ct. 923, 30 L. Ed. 75), where this question was presented, is ordinarily used to describe the general plan or system of work, and where it is so used, nothing more would seem to be decided than that the general features of the system of drainage to be adopted are to be settled by the corporation, and cannot be reviewed by the courts. Some authorities have gone much further than this, but is believed to be contrary to' principle and the weight of authority to maintain that, where in the performance of a public work, there is any breach of the duty to exercise care, an action by one who is damaged will not lie.''

In *McClure v. City of Red Wing*, 28 Minn. 186, 194, 9 N. W. 767, it was said :

''The duty of providing drainage or sewerage is in its nature judicial or legislative, and consequently a municipal corporation is not liable for mere non-action in failing to perform it. But that is not this case. It has also been held that, in adopting the *general plan* of an improvement, a municipality performs a legislative duty, whereas the manner of executing it is a ministerial one. In the case at bar, if it turned upon whether the duty was judicial or ministerial, we think the correct rule to apply would be that, in deciding upon the expediency of laying out this street, or upon the route thereof to be adopted, or the grade to be established, the city was exercising judicial duties, for errors of judgment in the performance of which they would not be responsible ; but, having determined these matters, and having decided it expedient to obstruct the natural channel of these waters,

and .to divert them into another and artificial channel, then, in executing and carrying this out, including the construction of the sewer and fixing. upon its size or capacity, they were exercising purely ministerial duties, in the performance of which they are held to the exercise of reasonable care.''

In *Johnston v. District of Columbia,* 118 U. S. 19, 6 Sup. Ct. 923, 924, 30 L. Ed. 75, the court. used this language :

''The duties of the municipal authorities, in adopting a general plan of drainage, and determining when and where sewers shall be built, of what size and at what level, are of a *quasi*-judicial nature, involving the exercise of deliberate judgment and large discretion, and depending upon considerations affecting the public health and general convenience throughout an extensive territory ; and the exercise of such judgment and discretion, in the selection and adoption of the general plan or system of drainage, is not subject to revision by a court or jury in a private action for not sufficiently draining a particular lot of land. . . . But the construction and repair of sewers according to the general plan so adopted are simply ministerial duties ; and for any negligence in so constructing a sewer, or keeping it in a repair, the municipality which has constructed and owns the sewer may be sued by a person whose property is thereby injured.''

The same principle was announced in *Thurston v. City of St. Joseph,* 51 Mo. 510, 11 Am. Rep. 463 ; *Judd et al. v. Hartford,* 72 Conn. 350, 44 Atl. 510, 77 Am. St. Rep. 512 ; *McCombs v. The Town Council of Akron,* 15 Ohio St. 474 ; *Barton v. The City of Syracuse,* 36 N. Y. 54 ; *Jenney et al. v. City of Brooklyn,* 120 id. 164, 24 N. E. 274.

There is a line of authorities which hold that municipal corporations are liable for the negligent performance only of such ministerial public duties as are

imposed upon them by law, but not for the negligent performance of assumed duties which are permissive only. To this doctrine we do not agree. The performance of public duties which are imperative upon the corporation, as well as those which are merely optional, is for the same general purpose—the general welfare of the community. When a municipal corporation assumes the performance of a public duty which was permissive only and enters upon the discharge of such duty, and through the negligent performance thereof by its authorized agents one is injured either in person or property, the corporation cannot escape liability by saying that the performance of this duty was not imperative. The principle here followed is well stated in *Tindley v. Salem*, 137 Mass. 171, 50 Am. Rep. 289, and the reasoning therefor we think sound.

Many authorities may be found among the adjudicated cases where the liability of municipal corporations was based upon, and would seem to be limited to, instances where the duty negligently performed lay in the management of property for which the corporation derived an immediate income. Such distinction cannot be sustained by reason. The liability springs from the duty which is due from every person, whether natural or artificial, to exercise such reasonable care in the conduct and management of his property that it will not unnecessarily result in injury to another. A municipal corporation in control of public property is not exempt from this rule when discharging a ministerial duty. Mr. Jones, at section 150 of his work on Negligence of Municipal Corporations, says:

"The obligation to exercise care does not arise between individuals because one pays money to another

and is therefore entitled to its exercise.   It springs, as has been said, from the right of personal safety, and is wholly removed from the question of pecuniary profit.   So between corporations, whether public or private, and individuals, the duty is not dependent on the payment of money.   It comes into existence from the same right of personal safety.   And it is not consistent with principle to hold that a duty exists to exercise care in respect to remunerative public property, but that no such obligation arises in respect to public property from which no income is derived.

"Moreover, the weight of authority does not justify a distinction of this character.   And an examination of the cases upon this question will sustain the conclusion that municipal corporations are responsible in damages for all injuries occasioned by their negligence in the management or care of public property, irrespective of the question whether an income is derived from it."

In the care and management of the fire station the city was performing a purely ministerial duty.   It was incumbent upon it to furnish its employees in charge of this property a safe place in which to work, and if the plaintiff was injured through the negligence of the city's agents in failing to perform this duty it was liable for such injuries.

The judgment of the court below is reversed, with instructions to overrule the demurrer to the petition.

All the Justices concurring.