## OKLAHOMA CITY v. FOSTER.

No. 16521—Opinion Filed April 20, 1926.

Rehearing Denied June 8, 1926.

1. **Municipal Corporations—Two Classes of Powers—Liability in Performance of Acts in Quasi Private Capacity.**

A city has two classes of powers: The one legislative, public, governmental, in the exercise of which it is a sovereignty, and governs its people; the other proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality, and if the power is substantially of the latter class, the city cannot escape liability for the careful performance thereof merely because it may in some general way also relate to a function of the government.

2. **Same—Liability for Torts of Officers.**

While cities are not liable for torts of their officers committed in the exercise of governmental powers delegated to a city as an agency of the state unless the liability is imposed by statute, they are liable for the negligence of their officers committed in the exercise of some power concerning which they are authorized to act by law or by the charter of the city for the private or corporate benefit of the city.

3. **Same.**

If the acts of the officers or agents of the city are for the special benefit of the city in its private or corporate interests, such officers are deemed the agents or servants of the city.

4. **Same—Police Department—Use of Motor Cars and Repair Shop—Governmental and Ministerial Duties Distinguished.**

In determining the necessity for a police department, the location of the police station, the number and salaries of its officers, the number, kind, or quality of motor vehicles, if any, needed, and the necessity for establishing a garage or shop for the repair of such motor vehicles, and all matters involving the efficiency of such department, the council or board of commissioners are acting in the exercise of their governmental or legislative powers, judgment, and discretion, and in the performance of such duties the question of nonfeasance or misfeasance are not subjects of judicial inquiry; however, when they have determined these questions, the execution of the work and management of its property is ministerial.

5. **Same—Negligence of Manager of City's Repair Shop—Liability of City for Injuries to Police Officer Caused by Defective Motor Car.**

Where a city operated a garage or repair shop for the purpose of repairing motor vehicles used in connection with the police department, although it places the same under the control and supervision of the chief of police, it is, nevertheless, in so far as the repair and maintenance of its motor vehicles, acting in its corporate or ministerial capacity, and where the chief of police, knowing the defective conditions of a motor vehicle, orders an officer of the city to use the same in performing his duties as a police officer, and orders the operator of the vehicle to take with him another officer not aware of the defective condition of the motor vehicle, and because of such defective condition such other officer is injured, the city will be liable in damages for the negligence of its superintendent of garage in permitting the use of such vehicle.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; George W. Clark, Judge.

Action by Joe L. Foster against the City of Oklahoma City, to recover damages sustained by being thrown from the side car of a motorcycle belonging to said city. Judgment for plaintiff, and defendant appeals. Affirmed.

Frank Martin, R. E. Wood, and Bliss Kelly, for plaintiff in error.

Gomer Smith, for defendant in error.

Opinion by RUTH, C. The parties hereto

will be referred to as they appeared in the trial court.

The allegations of the petition and the uncontroverted evidence is substantially as follows: On December 12, 1921, and prior thereto, plaintiff was a police officer on the "plain clothes" squad, and had been detailed on "scout duty" by the chief of police of Oklahoma City. That is, he was directed to ride in the side car of a motorcycle operated by Wilkes, another police officer of the defendant city, and their duties were to ride around or "scout" about the city to prevent crime, and to watch for offenders against the laws of the state or ordinances of the city, and to render services wherever needed. Plaintiff knew nothing of the construction, operation, or repair of motorcycles, and the same was operated and managed by Wilkes exclusively. On the night of December 11, 1921, Wilkes took plaintiff to his home, and Wilkes went to the police station, turned in his motorcycle, and reported to the chief of police that the brakes on the car would "lock," and refuse to function. The defendant city had established a garage or repair shop adjacent to the police station, for the maintenance and repair of cars and motorcycles used by the police department, and the chief instructed Wilkes to put the motorcycle in the repair shop and have the brakes adjusted or repaired, and to use the "extra" motorcycle the following morning, and the chief instructed the mechanic to fix the brakes. This Wilkes did, and used the "extra" on the morning of the 12th. of December, and Wilkes reported at the police station at noontime, but while he was in the station reporting, some officer was sent on a call with the extra motorcycle, and the chief ordered Wilkes to take the old defective car for scout duty that afternoon, but told him to be careful as the brakes had not been fixed and it was dangerous. Wilkes took the defective car under the orders of his chief and called at the home of plaintiff, who was to continue scout duty that afternoon with Wilkes as operator of the machine. It does not appear plaintiff was advised of the condition of the motorcycle, and did not know anything about the danger, but he got in the side car, and when they reached the vicinity of Walnut and Second streets, near No. 2 city fire station, a fire alarm was turned in. It appears it was a general order that police officers near the scene of a fire should immediately repair to the scene, or if in cars or motorcycles near a fire station, or on scout duty, to follow the fire apparatus to the point of the alarm and render such assistance as was required of them. When the fire apparatus left the station in response to the alarm, Wilkes drove his motorcycle some distance to the rear of the fire apparatus, and when they reached the intersection of either East Park or 11th and Walnut, where the apparatus had turned, Wilkes called, "The brakes won't work," and immediately the brakes locked, the motorcycle turned over, and plaintiff was catapulted from the side car and injured. The chief of police testified to substantially the same facts as testified to by Wilkes, with reference to his orders to use the defective motorcycle, and to his supervision and control of the garage or repair shop.

Defendant demurred to plaintiff's evidence, and upon the court overruling the same, defendant elected not to submit any evidence, and after receiving instructions from the court, the jury returned a verdict for plaintiff, and defendant appealed.

Defendant's brief does not comply with rule 26 of the rules of the Supreme Court, with reference to specially setting out the assignments of error relied upon for reversal, and the appeal is subject to dismissal upon this ground, in the discretion of this court, but as defendant lays down four general propositions of law, we will give them consideration, although they are not properly assignments of error. They are as follows:

"(1) Every municipality performs two functions, one governmental, the other corporate.

"(2) A policeman working for the city in the performance of police duties acts for the city in its governmental capacity.

"(3) The doctrine of 'respondeat superior' does not apply to officers acting for the city in its governmental capacity as a municipal corporation.

"(4) The law in reference to nonliability of municipal corporations acting in its governmental capacity is in effect as between officers of the city as well as to third persons."

In support of these propositions defendant cites City of Oklahoma City v. Hill Brothers, 6 Okla. 115, 50 Pac. 242. Hill Brothers had erected a building on two lots at the opening of the Territory. The city claimed they were "sooners," and the lots were the property of the city by virtue of a deed from the town-site board. Hill was operating a saloon, and the city authorities confiscated his liquors and furniture, claiming he was operating a gambling house, and took possession under the purported deed. Hill brought his action for damages, and was

awarded damages in the sum of $11,040.50, an upon appeal the territorial Supreme Court held the city's deed invalid, and ordered a remittitur reducing the judgment to $4,687.67 and the court held:

"While cities are not liable for torts of their officers committed in the exercise of governmental powers, delegated to a city as an agency of the state, unless the liability is imposed by statute, they are liable for the torts of their officers committed in the exercise of some power concerning which they are authorized to act by law, or by the charter of the city for the private or corporate benefit of the city."

Defendant cites Silva v. City of McAlester, 46 Okla. 150, 148 Pac. 150. This was an application for an injunction to prevent certain officers from tearing down a frame building within the fire limits. The injunction was denied for the reason the petition failed to allege the officers were acting or threatening to act under any legal or proper authorization of the city council, and the court held: "a city is only liable when its officers are acting within the scope of their authority."

City of Lawton v. Harkins, 34 Okla. 545, 126 Pac. 727, was an action for false arrest and imprisonment, where an officer arrested Harkins for unlawfully peddling his wares on the public streets, and this court held the city was not liable.

City of Shawnee v. Roush, 101 Okla. 60, 223 Pac. 354, cited by defendant, is decidedly more favorable to plaintiff than defendant. Plaintiff sued the city for injuries occasioned by an attendant at the city hospital. The defense was that the hospital was being operated, not for gain, but for governmental and charitable purposes, and this court, in affirming a judgment of the trial court in favor of the plaintiff, said:

"A city has two classes of powers, the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality, and if the power is substantially of the latter class, the city cannot escape liability for the careful performance thereof merely because it may in some general way also relate to a function of the government."

Defendant further cites Dillon on Municipal Corporations, vol. 4, p. 1056; 19 R. C. L. 392, 28 Cyc. 1299, and state reports in support of the following rule:

"When by action of the statute, a municipal corporation is charged with the preservation of the peace and the municipal corporation is charged with the governmental function in public interest and for public protection, in the exercise of its powers and duties in respect to the enforcement of ordinances and police regulations, it is entitled to the same immunity from the negligence of the officers appointed unless such liability is expressly declared."

We are in accord with the general rule thus announced, and recognize the reason therefor, and the same is the proper rule when the facts of the particular case admit of its application, but to apply the rule it must be conclusively shown that the municipality was acting strictly within its governmental, and not in its corporate, powers alone.

The mere fact that the injured person is in the employ of the municipality, does not relieve the city of liability to the injured person in all instances. It is true that it has been held in some states, that police officers and firemen are acting always in a governmental capacity, so far as relates to fixing liability upon a city for their injuries, but this holding is by no means universal; in fact, it appears to be rather the exception than the rule, and, in the City of Ardmore v. Fowler, 54 Okla. 77, 153 Pac. 1117, in affirming the judgment of the trial court awarding Fowler, a city fireman, damages for injuries sustained while his apparatus was responding to an alarm of fire, the injuries being occasioned by the apparatus crossing a defective place in the street pavement, this court quotes with approval City of Valparaiso v. Chester, 176 Ind. 636, 96 N. E. 765, as follows:

" 'While a fireman in the employ of a city is not a servant in the sense of one serving a private corporation and is not one in which the maxim respondeat superior is made applicable or can be invoked for his acts (4 Dillon on Municipal Corporations [5th Ed.] section 1660), nevertheless, the city is required to keep and maintain its streets in a reasonably safe condition for the use of its firemen in the discharge of their duties in like manner as it is required to do for the use of other travelers or persons.'

" 'The general rule, supported by the authorities, is that the duty devolving upon a city or town to keep its streets in repair is not limited alone to repair for travelers, but they are to be kept in repair for all the purposes to which they may be lawfully devoted. Chicago v. Keefe, 114 Ill. 222, 2 N. E. 267, 55 Am. Rep. 860'."

This court in the body of the opinion used this language:

"The fact that the valley had become worn

and formed a 'hole,. ditch, or gutter,' as termed by some of the witnesses, and the further fact that the 'depression' was either in the valley or in close proximity, make the situation more significant, in that it ceases to be a slight depression, but is a defective condition, not only dangerous to ordinary vehicles, but what might be a death trap to a fireman, who must obey instructions and go when and where called, on slight notice, and at the greatest speed possible."

The establishment by the defendant of a garage for the repair of the city's motor vehicles was in no manner governmental in its character, but was wholly corporate. It was in no manner a police regulation made and enforced in the interests of the public, any more than was the duty to keep a street in condition suitable for ordinary travel, and by placing the chief of police in charge of such repair shop, with power to make, or have made, necessary repairs to motor vehicles, it became his duty to the city, and a duty he owed to those under his orders, to see to it that such motor vehicles were at all times in a condition suitable for the services to be performed, and for the negligence of the chief of police in performing this duty, the city will be liable. The chief knew, and it is a matter of common knowledge that motorcycles can, and frequently do, attain a speed of 100 miles per hour, and the chief well knew that at any moment the operator thereof might be called upon to race his machine at the highest possible speed. If the motorcycle had even been in a reasonably safe condition for high speed, if it had defects unknown to the chief and was used by the officers in the performance of their duties, the rule contended for by defendant would apply, but to send officers out on or in an automotive vehicle, well knowing that the brakes thereof were liable to lock at any moment, is equivalent to sending them to certain death or serious bodily injury, and the defendant cannot absolve itself from liability by pleading "governmental function in public interest and for public protection" in the instant case.

In Cummins v. Lobsitz et al., 42 Okla. 704, 142 Pac. 993, this court said:

"If the acts of the officers or agent of the city are for the special benefit of the corporation in its private or corporate interests, such officer is deemed the agent or servant of the city."

In City of Denver v. Davis (Colo.) 86 Pac. 1027, in affirming the judgment of the trial court it is said:

"The rule which determines the liability or nonliability of a municipality in cases of this nature is the character of the duty performed. rather than the department, officer or agent of the corporation by whom the duty is performed."

In Denver, U. & P. R. Co. v. Porter, 126 Fed. 288, the court said (p. 293):

"But in almost all affairs of purely local concern, some indirect relation may be traced to a matter of health, safety, or other subject of governmental cognizance. The test is not that of casual or incidental connection. If the duty in question is substantially one of a local or corporate nature, the city cannot escape responsibility for its careful performance because it may in some general way also relate to a function of government."

See, also Tideman on Municipal Corporations, pp. 706, 707, 19 R. C. L. sec. 399, pp. 1120, 1121; 12 L. R. A. (N. S.) 539; 17 L. R. A. (N. S.) 741; Dillon's Mun. Corp. secs. 971, 981, 985; Greenwood v. Town of Westport, 60 Fed. 560; Hart v. Bridgeport, 13 Black, 293; City of Galveston v. Posnainsky, 62 Tex. 1118.

In Levin v. City of Omaha (Neb.) 167 N. W. 214, a police officer, by the name of Baughman, was given charge of the garage established by the city for the repair of the city's motor vehicles. He ordered repairs made when necessary. In an action for the death of a person by what was alleged to be a city automobile, Morrissey, C. J., delivering the opinion of the court, said:

"When a policeman of a metropolitan city is assigned to work outside the duties of a peace officer, but falling within the corporate functions of the municipality, he becomes a servant of the municipality in its corporate capacity."

Sedgwick, J., concurring, said:

"We have generally held that, when a municipal corporation engages in such business (repairing its automotive cars) its responsibilities and liabilities are the same as are those of private corporations or individuals in the conduct of such an enterprise."

In Bowden v. City of Kansas City, 69 Kan. 587, the plaintiff was a member of the city fire department. His duty was to clasp the collars of the horses after they ran to their places to be hitched to the apparatus. On account of defective flooring the plaintiff was injured. Demurrer was sustained to the petition, and in reversing the trial court, the Supreme Court of Kansas said:—

"Nonliability is asserted on the ground that municipal corporations are created by the state to assist in the administration of its laws. That the maintenance of a fire department is a governmental duty, and in the performance of such duty, cities are

limited sovereignties or miniature states, and are exempt from all liability for the misfeasance of their agents."

After thus stating the grounds urged upon demurrer the court draws a very clear distinction between the exercise of governmental functions and corporate functions as follows:

"In determining the necessity for a fire department, the number and location of fire stations, the kind, quality, and number of fire extinguishers, and all matters involving the efficiency of such department, the council are in the exercise of their legislative power, judgment, and discretion. * * * Having, however, determined these questions, the **execution** of the work and the **management** of its property is ministerial."

The court thereupon held the corporation is performing a ministerial duty in maintaining a fire station, and is liable in damages to an employee for personal injuries resulting from the neglect of the corporation to furnish a reasonably safe place in which to work. Applying the rule thus announced to the instant case, it will be conceded the defendant, in determining the kind, character, capacity, etc., of the motor vehicles it would require for the police department, was acting in its legislative or governmental capacity, but when it operated the garage for the maintenance and repair of the vehicles, and placed in charge thereof the chief of police, and vested him with power to determine when, how, and what repairs were to be made the defendant was acting in its corporate and ministerial capacity, and will be liable for such negligence as complained of and proven in the instant case.

While the defendant assigns numerous errors in its petition in error, it does not assign or argue them in the brief, and where error is not assigned in the brief and argued therein, such error, if any, as occurred in the trial court will be deemed to have been waived. A brief discussing simply abstract questions of law, without calling the attention of the court to any specific ruling or error committed by the trial court, is insufficient. Bd. of County Commissioners, Custer County, v. Moon, 8 Okla. 205, 57 Pac. 161.

We have very carefully considered the four general propositions of law set forth in defendant's brief, and finding no error, the judgment of the trial court is affirmed.

By the Court: It is so ordered.