USLETTEN, Respondent, v. CITY OF BROOKINGS, et al, Appellants.

(240 N. W. 851.)

(File No. 6975. Opinion filed February 17, 1932.)

478

For former opinion, see 58 S. D. 303, 235 N. W. 705.

*Cheever, Collins & Cheever,* of Brookings, and *Bogue & Bogue,* of Parker, for Appellants.

*Hall & Eidem,* of Brookings, for Respondent.

ROBERTS, J.  The decision of this court on a former appeal, reported in 53 S. D. 644, 222 N. W. 268, sustained the order of the trial court overruling demurrer to the complaint.  After trial in the circuit court on the merits and decision on appeal in this court, 58 S. D. 303, 235 N. W. 705, the defendants made application for rehearing, which was granted.

This action was instituted for the recovery of damages for personal injuries sustained by the plaintiff.  Upon the occasion in question the plaintiff met a friend, Ben Togsed, and they stopped to converse.  Plaintiff leaned back against an iron railing which was intended to protect an opening in and along the inner side of

a public sidewalk in the city of Brookings which afforded access to a cellar. The railing gave way at the point where it had been broken and fastened with wire, and plaintiff was precipitated into the opening and injured. On cross-examination, plaintiff testified: "I may have seen the rail the day before the accident but I didn't know it was laying there loose. I never sat on that same rail that gave way with me on May 2nd, 1927, before that time. I never saw any wire fastened to that rail which gave way with me on May 2, 1927. I never looked to see whether there was any wire on that rail or not. My eyesight was good then. It is pretty good yet. I have always enjoyed pretty good eyesight until I got hurt. It is pretty good yet. Before I was hurt on May 2nd I had to use glasses to read, but for mechanical work I did not need glasses prior to the second of May, 1927. That wire is large enough so I can see it without any trouble now. If that top rail had been wrapped with wire about the size of the wire Exhibit 3 and if I looked at it I wouldn't have had any trouble seeing it. I wasn't looking for that wire. If I had looked I could have seen it. I didn't look. Because I didn't look I didn't see it. I never noticed the east end of the rail at all. I couldn't tell whether any portion of the bracket holding the east end was broken at all. If I had looked at it and it was broken I could have seen it, but I didn't pay any attention to it. I knew when I leaned up against that rail that if it was loose, I would know that I would fall. If I knew it was a loose railing, I knew that if I fell in there I was liable to get hurt. I never measured the depth of that areaway. I knew it was quite a hole. I knew pretty near how deep it was. I knew when I leaned against that guard rail that the thing which prevented me from being precipitated into the areaway was the guard rail itself, but I didn't know it was loose. I knew if it was loose I knew I would go into there. I never looked to see if it was loose before or after I was hurt."

Defendants at the close of plaintiff's case, as well as at the conclusion of the evidence, moved for a directed verdict, which was denied. Counsel for the defendants assert that the testimony of the plaintiff conclusively shows that the plaintiff was contributorily negligent, and that a verdict should have been directed by the trial court in favor of the defendants. It is their contention that, if the plaintiff had used his faculties, he would have discov-

ered not only the fact that the flange which supported the end of the rail which gave way was broken, but he would have discovered that the wire which had been used to bind the guard rail to the broken bracket on the iron post was loose, and that, if plaintiff had used his eyes for his own safety and preservation, he would never have been precipitated into the opening. Counsel urge that plaintiff's conduct did not conform to the required standard of care and prudence recently enunciated by this court in the cases of Descombaz v. Klock, 58 S. D. 173, 235 N. W. 502, 504, and Taecker v. Pickus et al, 58 S. D. 177, 235 N. W. 504, 505. The circumstances are entirely different. What is ordinary care under one state of facts may not constitute the same care under another or different state of facts. In other words, a careful and prudent person must make such observation as the circumstances reasonably require. The greater and more imminent the danger, the greater must be the care to be exercised.

In each of the cases referred to and relied upon by the defendants, the plaintiff sought the recovery of damages for injuries received in an automobile accident. In the first case cited, Descombaz v. Klock, the plaintiff, repairing a tire on the highway in front of a standing automobile, was held contributorily negligent in failing to step to the edge of the highway when he saw that a rear end collision with an approaching automobile was imminent. Under the circumstances the plaintiff was required to be alert for his own safety and to watch for the approach of automobiles. We quote from the opinion: "It is the function of a highway to furnish a safe and convenient place for travel. Conceding that the temporary use of a highway for making an emergency repair to a vehicle is a proper use, it is nevertheless a partial obstruction to traffic engaged in the normal use of the highway, and it is the duty of one so engaged to obstruct the traffic as little as conveniently possible and not to unnecessarily endanger others. And he must keep a reasonable lookout to avoid injury to himself or property. Nothing less can justify such use of a highway. By lighting the lights he had respondent may have done all that he could under the circumstances to warn others of his presence, but that did not excuse him from keeping a lookout to avoid injury from moving traffic."

In Taecker v. Pickus et al, the plaintiff, driving an

automobile, failed to observe gravel dumped in the middle of the highway, and the automobile struck the obstruction, causing injuries to the plaintiff. It is pointed out in the opinion that the accident occurred on a clear day; that there was no traffic in the vicinity of the accident to interfere; that the plaintiff was an experienced driver, with good eyesight; and there was nothing to obstruct her vision. We held in that case that the plaintiff was contributorily negligent as a matter of law. Plaintiff in the instant case had a right to assume in the absence of knowledge to the contrary or in the absence of visible obstruction or of some circumstance sufficient to place him on inquiry that all parts of the sidewalk-intended for public travel were in a suitable condition for such use. He was not bound to anticipate or search for defects. Assuming that no greater amount of caution is required of a person driving an automobile on a highway than of a pedestrian using a public sidewalk, the fact that the plaintiff in the case of Taecker v. Pickus failed to see what a person observing his general course would necessarily see clearly differentiates the case from the present action. No duty rested upon the plaintiff to inspect the railing before leaning against it, and it does not conclusively appear from the evidence that the plaintiff in the instant case did not observe what ordinary vision would necessarily observe. It cannot be said, as a matter of law, that he was guilty of contributory negligence. This was a controverted issue of fact for determination by the jury.

The further contention is made that it was contributory negligence, as a matter of law, for the plaintiff to have used the railing guarding the open areaway in the manner indicated by the testimony. Counsel point out that they are not unmindful of the fact that this court on the appeal from the order overruling demurrer in this case said: "We think it is a question for the jury in each particular case, whether or not one who has stood on the street for casual conversation, is, by leaning against a railing guarding a cellarway in the place where he has stopped, so far deviating from traveling purposes as to preclude a recovery from the municipality for injury sustained in consequence of the railing giving away, due to negligence imputable to the municipality." However, defendants contend the evidence as disclosed by the record is so entirely different from the facts alleged in the pleadings

that a diffrent conclusion must be reached; that the complaint alleges that the plaintiff "leaned lightly" against the guard rail, but the evidence shows that the plaintiff leaned "substantially the entire weight of his body" against the same.

Plaintiff testified: "The sidewalk around the areaway is a little lower than the stone cap or ledge that these iron posts are bolted to. I can't say how much lower. I never measured it. It might be an inch. It might be a little less than an inch. I haven't got an idea. I just barely touched the rail and I was overbalanced and went backward. I was leaning pretty well backwards. I just barely touched it. I couldn't state whether my heels were on the sidewalk or on the capstone. If it was on the stone it might have been just the heels, there is not room for the whole foot. I didn't try to sit on the rail."

Ben Togsed, a witness for the plaintiff, testified: "He (plaintiff) put his hands behind him and leaned against the rail and the railing fell down. His feet were on the sidewalk. There is a capstone on the sidewalk where that rail is and the iron rail is fastened to the posts that are set in the capstone. He stood on the sidewalk just like standing on the floor. His heels were an inch and a half or something like that from the rock."

The capstone or ledge referred to is concededly one foot wide, and this is the measurement that appears in a plat or blueprint of the sidewalk and areaway received in evidence. The plat, however, does not indicate the measurement from the outer side of the capstone to the iron post to which the broken flange was fastened, but Victor Faust, a witness for the defendants, testified: "This post is set in the center of the capstone. From the post to the outside of the capstone is possibly $4\frac{1}{2}$ or 5 inches." The iron posts measure 3 inches in diameter, and the horizontal rails 2 inches. The jury from this evidence could have reasonably concluded that the capstone projects 5 to $5\frac{1}{2}$ inches on the outer side of the horizontal rails, and that the plaintiff stood with his hands behind him, his feet on the sidewalk, and his heels not more than 7 inches from the outer edge of the guard rails. From this evidence it does not conclusively appear that plaintiff leaned "substantially the entire weight of his body against the railing," granting that a strain exerted against the railing in excess of that caused by casually lean-

ing against it would constitute such an unreasonable use of it as to preclude a recovery.

After re-examining the contention of the defendants that the trial court erred in admitting in evidence portions of the answers interposed by the defendants, we are satisfied that the conclusion of our former opinion that if improperly admitted no prejudice resulted is correct.

It remains to consider the contention that the court erred in refusing the following requested instruction: "You are instructed that a municipal corporation is not liable for every accident that occurs within its limits. Its officers are not required to do every possible thing that human energy and ingenuity can do to prevent the happening of accidents or injuries to the citizens; the law does not require that the city shall do more than keep its streets and sidewalks in a reasonably safe condition, and *defects in the sidewalk to make the city liable must be such as are in themselves so dangerous that a person exercising ordinary prudence could not avoid injury."*

The court instructed the jury that the city was not "an insurer of those who used its sidewalks, nor is every defect therein, though it may cause an injury, actionable; all that the law requires is that the sidewalks shall be reasonable safe for those using the same." Counsel concede that this instruction in substance embraced the portion of the requested instruction stating that a city is not liable for every accident that may occure within its limits, and is not required to do more than keep its sidewalks in a reasonably safe condition, but they complain in particular of the failure of the court to convey to the jury the portion of the requested instruction appearing above in italics. The requested instruction is a literal statement of the law appearing in the opinion of this court in Bohl v. City of Dell Rapids, 15 S. D. 619, 91 N. W. 315. It is an attempt to state negatively the rule concerning the duty of a city in the maintenance of its sidewalks. What was intended under this rule announced in Bohl v. City of Dell Rapids, supra, is that, although a municipal corporation is not an insurer of those who travel its streets, and is not required to keep its streets in such a condition as to insure safety of travelers under all circumstances, there is an affirmative duty imposed upon its officers to exercise ordinary care in maintaining its sidewalks in a reasonably safe

condition for the purposes for which sidewalks are intended. After a careful consideration of the court's instructions, we are satisfied that the trial court fairly and correctly instructed the jury with reference to the duty of a municipal corporation with respect to the maintenance of its sidewalks, and in substance incorporated the requested instruction.

We therefore adhere to the result arrived at in the former opinion, and the judgment and order appealed from are affirmed.

POLLEY, WARREN, and RUDOLPH, JJ., concur.

CAMPBELL, P. J., dissents.