BUCHOLZ, Respondent v. CITY OF SIOUX FALLS,
Appellant

(91 N.W.2d 606)

(File No. 9645. Opinion filed August 15, 1958)
Rehearing denied November 25, 1958.

**John E. Burke, Robert S. Golden,** Sioux Falls, for Defendant and Appellant.

**Henry C. Mundt, Acie W. Matthews** and **Lacey, Parliman & Heuermann,** Sioux Falls, for Plaintiff and Respondent.

ROBERTS, J. This action was commenced by Albert Bucholz as special administrator to recover damages for the alleged wrongful death of his minor son. From a judgment on a verdict in the amount of $7,000, defendant city appeals.

The City of Sioux Falls had some time prior to 1950 constructed, and thereafter maintained, a pistol and rifle range in the basement of the city hall for the use of the members of its police force for target practice. On Monday evening, November 21, 1955, plaintiff's 16 year old son and four companions, ages fifteen to seventeen, with the permission of police officers, but without supervision, were there engaged in target shooting. Dennis Bucholz was accidentally shot and killed by the discharge of a rifle in the hands of one of his companions. Plaintiff contends that defendant city failed to provide adequate supervision and to exercise reasonable care for the protection of youthful invitees and permittees using the rifle range.

It is undisputed that groups of boys twelve years of age and over had for several years been permitted by the Chief of Police to use the range for target shooting. The program was under the auspices of the Recreation Council of the city and was conducted according to rules of the National Rifle Association by supervisors employed by the

council. Kenneth Chamberlain, witness for the city, testified that since May 1954 he had been Chief of Police of the City of Sioux Falls; "that the range was for use of personnel other than the Police Department provided that they were supervised, and that * * * use of the range be planned for in advance so that the supervisor could be checked to see whether he was adequate"; that he had appeared and made that statement in substance on a local television program; that a key placed on a hook beneath the sergeant's desk was to be handed only to persons who were on a prepared list; and that if the officers in charge permitted the decedent and his companions to use the rifle range they did so contrary to instructions.

It appears in addition to the facts stated that the five boys went to the Police Department in the city hall and asked the desk sergeant if they could use the range for target shooting. The officer asked them if they had the consent of their parents and what kind of guns they had. The desk sergeant, with consent of the lieutenant in charge, gave the boys the key to the range. After getting their rifles which they had left in their car, the boys unlocked the door and entered the range and, unattended and unsupervised, engaged in target shooting. A rifle as we have stated in the hands of one of the boys accidentally discharged and the bullet therefrom struck Dennis Bucholz near the left temple, killing him almost instantly.

Counsel for the city contend (1) that since the act of the police officers in granting permission to use the rifle range was without authority and contrary to specific instructions of the Chief of Police, the city is not liable and (2) that the city was immune from liability for the reason that the power and the duty to maintain a police force and to provide a target range primarily for the use of the police force is governmental.

The law is settled by numerous decisions of this court that a municipal corporation is not liable for the negligence of its officers or agents when in performance of a governmental function, but is liable in the same manner as an individual or corporation for tort committed

in its corporate or proprietary capacity. O'Rourke v. City of Sioux Falls, 4 S.D. 47, 54 N.W. 1044, 19 L.R.A. 789; Jensen v. Juul, 66 S.D. 1, 278 N.W. 6, 115 A.L.R. 1280, and cases cited; State ex rel. Hurd v. Blomstrom, 72 S.D. 526, 37 N.W.2d 247; Burkhard v. City of Dell Rapids, 76 S.D. 56, 72 N.W.2d 308. The doctrine of respondeat superior under which an employer is liable for the negligent acts of his employees in the course of their employment applies in a proper case to the acts of municipalities done in their corporate or proprietary capacity and liability exists; but not to those which they perform as functions of government delegated by the state. McQuillin, Municipal Corporations, 3rd Ed., § 53.65; Gebhardt v. Village of La Grange Park, 354 Ill. 234, 188 N.E. 372; Florey v. City of Burlington, 247 Iowa 316, 73 N.W.2d 770; Hill v. Housing Authority of City of Allentown, 373 Pa. 92, 95 A.2d 519. As was noted in Jensen v. Juul, supra, a municipality is not in any instance liable for tortious acts which are wholly outside of the powers conferred upon it. It is, however, liable for the torts of officers and agents acting within the general scope of its corporate powers and in the exercise of proprietary functions even though their acts in a particular case are unauthorized or contrary to specific instructions. If this were not the rule as suggested by the New York court in Augustine v. Town of Brant, 249 N.Y. 198, 163 N.E. 732, a municipal corporation could never be held liable for tort for the reason that no municipal corporation is authorized to do wrongful acts.

While the distinction between governmental and corporate or proprietary functions is in nearly all jurisdictions recognized in determining the tort liability of municipalities difficulty often arises in the application of the rule and holdings have not been uniform and consistent. The Supreme Court of the United States in City of Trenton v. State of New Jersey, 262 U.S. 182, 43 S.Ct. 534, 538, 67 L.Ed. 937, 29 A.L.R. 1471, in this connection said: "The distinction between the municipality as an agent of the state for governmental purposes and as an organization to care for local needs in a private or proprietary capacity has been applied in various branches of the law of muni-

cipal corporations. The most numerous illustrations are found in cases involving the question of liability for negligent acts or omissions of its officers and agents. See Harris v. District of Columbia, 256 U.S. 650, 41 S.Ct. 610, 65 L.Ed. 1146, 14 A.L.R. 1471, and cases cited. It has been held that municipalities are not liable for such acts and omissions in the exercise of the police power, or in the performance of such municipal faculties as the erection and maintenance of a city hall and courthouse, the protection of the city's inhabitants against disease and unsanitary conditions, the care of the sick, the operation of fire departments, the inspection of steam boilers, the promotion of education and the administration of public charities. On the other hand, they have been held liable when such acts or omissions occur in the exercise of the power to build and maintain bridges, streets and highways, and waterworks, construct sewers, collect refuse and care for the dump where it is deposited. Recovery is denied where the act or omission occurs in the exercise of what are deemed to be governmental powers, and is permitted if it occurs in a proprietary capacity. The basis of the distinction is difficult to state, and there is no established rule for the determination of what belongs to the one or the other class. It originated with the courts. Generally it is applied to escape difficulties, in order that injustice may not result from the recognition of technical defenses based upon the governmental character of such corporations."

In the early case of O'Rourke v. City of Sioux Falls, supra, upon which counsel for the city principally rely, this court held that a municipality is not liable for the failure of police officers to enforce an ordinance. There a cannon was fired in the streets of the city by persons with permission of the police and the plaintiff was injured by a wadding fired from the cannon. It was held that the city was not liable. In the course of the opinion it was said [4 S.D. 47, 54 N.W. 1046]: "In the enactment of ordinances, and in the appointment of officers and agents for their enforcement, the municipality is exercising a governmental authority, * * *."

In Walters v. City of Carthage, 36 S.D. 11, 153 N.W.

881, 882, the defendant municipality, despite the fact that fire prevention is a governmental function, was held liable for maintaining a door on a fire engine house in such a manner that it fell and injured a child on the sidewalk in front of the building. This court said: "It is well settled that municipal corporations have certain powers which are discretionary or judicial in character, and also certain powers which are ministerial. They will not be held liable in damages for the manner in which they exercise in good faith their discretionary powers of a public character, but are liable for damages caused by their negligence when their duties are ministerial. A municipal corporation acts judicially when it selects a plan for some public improvement; but as soon as it begins to carry out the plan, it acts ministerially and is bound to see that the work is done in a safe manner. 2 Dill.Mun.Corp. §§ 949, 832, 1048. Johnston v. Dist. of Columbia, 118 U.S. 19, 6 S.Ct. 923, 30 L.Ed. 75; City of Chicago v. Seben, 165 Ill. 379, 46 N.E. 244, 56 Am.St.Rep. 248. A municipal corporation is performing a ministerial duty in maintaining a fire station and is liable in damages for neglecting to make the same safe. Bowden v. Kansas City, 69 Kan. 587, 77 P. 573, 66 L.R.A. 181, 105 Am.St.Rep. 187, 1 Ann.Cas. 955; Kies v. City of Erie, 169 Pa. 598, 32 A. 621." Among other decisions drawing a distinction between legislative, judicial and discretionary functions such as selecting a plan for public improvements and ministerial duties are Deschner v. City of Ipswich, 59 S.D. 456, 240 N.W. 487; Hermandson v. City of Canton, 60 S.D. 367, 244 N.W. 525; Nelson v. City of Sioux Falls, 67 S.D. 320, 292 N.W. 868.

 It is now settled in this state that a municipality while engaged in the construction, repair or maintenance of its streets and sidewalks acts in a corporate or proprietary capacity and is liable for injuries resulting from the negligence of its officers and agents. The following are a few of the cases so holding: Bohl v. City of Dell Rapids, 15 S.D. 619, 91 N.W. 315; Smith v. City of Yankton, 23 S.D. 352, 121 N.W. 848; Connell v. City of Canton, 24 S.D. 572, 124 N.W. 839; Gellenbeck v. City of Mobridge, 40 S.D. 157, 166 N.W. 631; Usletten v. City of Brookings,

59 S.D. 477, 240 N.W. 851; Drake v. City of Mobridge, 60 S.D. 79, 243 N.W. 429; Gurney v. Rapid City, 74 S.D. 194, 50 N.W.2d 360.

The same rule applies to the liability of a city for injuries resulting from defective condition of a city hall used primarily for the offices of city employees conducting a municipal light plant. Ring v. City of Mitchell, 64 S.D. 67, 263 N.W. 893.

■ In Norberg v. Hagna, 46 S.D. 568, 195 N.W. 438, 439, 440, 20 A.L.R. 841, plaintiff sought to recover damages against the City of Watertown for injuries caused by the neglect of the city in permitting a swimming pool in a city park to be in an unsafe condition. Applying the principles announced in the Walters v. City of Carthage case and those established in the street and sidewalk cases this court held that there is no basis for a distinction between those facilities and public parks in the matter of negligence for the reason that the "same law that requires a municipal corporation to keep its streets free from nuisances, and reasonably safe for those who lawfully use them, also imposes upon it the duty to keep its public parks and other public places in a reasonably safe condition for all who lawfully frequent and use them." See also, Glirbas v. City of Sioux Falls, 64 S.D. 45, 264 N.W. 196; Orrison v. City of Rapid City, 76 S.D. 145, 74 N.W.2d 489. The reasoning of the Norberg v. Hagna case was followed in holding that a municipality maintaining a baseball park does not exercise a governmental function so as to relieve it from liability for negligence. Jensen v. Juul, supra. Thus a municipality in maintaining parks and recreation areas acts in its proprietary capacity and is liable for the improper management and use of such property to the same extent and in the same manner as private individuals.

■ It is the nature of the activity that determines whether it is ministerial or proprietary, and not the location, nor the fact that the facility may also be used for governmental purposes. It would be obviously unsound to hold that a municipality assumes the burden of tort liability in the exercise of a ministerial or proprietary function when it provides special facilities or equipment for target shooting

in a public park, but is immune when it makes possible the same opportunity in a city hall.

■ The city of Sioux Falls under the evidence had at least constructive notice that the rifle range for several years had been used by groups of persons other than members of the police force for target shooting and with the permission of the Chief of Police. Municipalities are authorized to provide and manage recreational areas and to sanction the use of "public property" other than that expressly acquired for recreation. SDC 53.0303; SDC Supp. 45.32. The use of the rifle range for recreational purposes was not wholly outside the powers conferred on municipalities. It would not reasonably follow from decisions of this court on the subject of tort liability that the supplying of facilities for recreation in a municipal building primarily used for city offices constitutes the performance of a governmental function.

■ The action herein is predicated upon the alleged negligence of the two police officers and the conduct of the Recreational Council and its employees is not involved. The city does not maintain that there was no liability because of the provisions of SDC Supp. 45.3224. While that statute provides tort immunity "for injuries sustained by any person through the negligence of the officers or employees of the recreational board while engaged in the operation of a system of public recreation and play grounds", the immunity does not extend to the assumed activities of other officers or employees of the city.

■■ The alleged breach of duty herein was not a failure of the city to maintain its facilities in a reasonably safe condition. The duty, however, of a municipality may go beyond that of maintaining the physical condition of a recreational area under its control and management. Glirbas v. City of Sioux Falls, supra. Under certain situations it is the duty of a landowner to control the conduct of another to avoid unreasonable risk to a third party. Thus the rule as formulated in the Restatement of the Law of Torts, Vol. 2, § 318, reads: "If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to

exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control. " In a case decided by the Supreme Court of Pennsylvania, Stevens v. City of Pittsburgh, 329 Pa. 496, 198 A. 655, 661, a somewhat similar situation was involved. A boy eight years of age was killed by a bullet fired by a person in a near-by park. The court in that case cited a decision of this court, O'Rourke v. City of Sioux Falls, supra, among others, in support of the principle that a municipality in supervising, regulating, and controlling, the actions of persons upon its streets is acting in its governmental capacity and therefore is not liable for the failure of its police officers and employees to protect residents and travelers from injuries caused by the dangerous or negligent conduct of other persons permitted to occupy its streets. But the court points out that there is a distinction between the failure of a municipality as a subdivision of the state to police its streets and its control and supervision in its proprietary capacity of recreational activities in public parks, and concluded that "Promiscuous shooting in the park by the city's permittees or invitees was clearly a highly dangerous activity and such a use of the city's land as would be likely to cause injury to other persons, outside of as well as within the park." The court further stated: "It is not an unwarranted extension of tort liability, under such circumstances, to impose upon the city, in its proprietary capacity, the duty to take reasonable measures to prevent or control such conduct by its permittees upon its land."

▉▉▉ The contention that there can be no municipal liability for negligent acts done by police officers is untenable. The breach of duty by a police officer does not necessarily constitute a failure to perform properly a governmental function. In City of Denver v. Davis, 37 Colo. 370, 86 P. 1027, 1028, 11 Ann.Cas. 187, the court said: "The

rule which determines the liability or nonliability of a municipality in cases of this nature is the character of the duty performed, rather than the department, officer, or agent of the corporation by whom the duty is performed." See also, Oklahoma City v. Foster, 118 Okl. 120, 247 P. 80; City of Birmingham v. Weston, 233 Ala. 563, 172 So. 643, 109 A.L.R. 970; Shinnick v. City of Marshalltown, 137 Iowa 72, 114 N.W. 542; Twist v. City of Rochester, 165 N.Y. 619, 59 N.E. 1131.

 Negligence arises from breach of duty and is commensurate as to time, place and circumstances. The greater the danger, the greater the care required, so that a very high degree of danger calls for a very high degree of care, which, however, amounts to ordinary care in view of the situation and circumstances. Granflaten v. Rohde, 66 S.D. 335, 283 N.W. 153. The discharge of firearms by boys is a highly dangerous activity and the officers and agents of a municipality may not ignore foreseeable dangers when such activity is unsupervised. Stevens v. City of Pittsburgh, supra; Caldwell v. Village of Island Park, 304 N.Y. 268, 107 N.E.2d 441. Infant decedent under the undisputed facts was an invitee and not a trespasser or mere licensee. We do not think that upon the facts of record the court erred in permitting the jury to determine whether or not his death resulted from the negligent failure of the city to take appropriate action to prevent danger or risk to human life.

Judgment appealed from is affirmed.

HANSON, J., and SEACAT, Circuit Judge, concur.

RENTTO, P. J., and SMITH, J., dissent.

SEACAT, Circuit Judge, sitting for BOGUE, J., disqualified.

RENTTO, P. J. (dissenting).

I dissent. While I go along with the majority in its conclusion that the activity here involved is beyond the pale of governmental immunity, I part company with them on the liability of the city in this case. This record does not show that the defendant city had availed itself

on the provisions of SDC Supp. 45.32 or created the recreation board provided for in that act. To the contrary it leaves the definite impression that the recreational council which used the police rifle range for recreational purposes was a private group having no official connection with the city.

In my view the Chief of Police has no authority to put the city into the recreation business. It may well be that if by attempting to do so he creates a dangerous situation in property belonging to the city, of which the city has notice, that it might be liable because of its failure to remedy such hazard. But this case was not brought or tried on that theory. While the evidence would warrant holding that the city had at least constructive notice that the police rifle range had been used for target shooting for several years by others than members of the police force with the permission of the chief, the occasion on which this death occurred was the first time any youngsters without supervision had been permitted to use it. I would reverse.