GESCHWIND v. BRORSEN.

No. 35238. June 23, 1953.

*258 P. 2d 619.*

Al. T. Singletary, Perry, for plaintiff in error.

L. E. Roseboom, Enid, for defendant in error.

WILLIAMS, J. Parties are referred to herein as in the trial court.

In 1949, defendant received a notice from the Collector of Internal Revenue to bring his financial records and books to the post office at Perry, Oklahoma, for an examination as to the source and extent of his income for certain years. Shortly thereafter, defendant hired plaintiff, who is a licensed attorney and certified public accountant specializing in tax matters, to represent him and assist in straightening out his tax troubles. The contract of employment was partly oral and partly written, but its terms, including a rate of payment based upon hours of work performed, were definitely proved at the trial, and were not denied by defendant.

Before hiring plaintiff, defendant had retained another attorney, who was not a tax specialist. This attorney worked on the case for some time; when it became apparent to him that the financial affairs of defendant were in such condition that much accounting work would be required, he withdrew from the case and recommended the employment of plaintiff. As a part of plaintiff's contract of employment, defendant agreed to pay to the plaintiff the fee due the first attorney hired, and plaintiff agreed to pay such sum to the attorney. As a result of his agree-

ment, plaintiff was to be allowed to use the information already compiled by the first attorney. This fee is included in the amount here sued for.

Defendant represented to plaintiff that his financial affairs were simple and that not much work would be required. However, as plaintiff got into the work, which extended over a period of several months, he found that such was not the case; for instance, defendant had told him that he had made 16 interest bearing loans during the period in question; plaintiff's investigations showed that there were 93 such loans. Plaintiff testified that as more and more tax liability was uncovered, defendant became less co-operative, and plaintiff's work was thereby made more difficult. In order for him to complete his work, plaintiff had secured several continuances from the Collector; finally, as a condition of granting another continuance, the Collector demanded that plaintiff file a power of attorney showing that he was in fact representing defendant. It was shown that such an instrument was required to be filed by U. S. Treasury Department regulations.

In an effort to comply with the Collector's demand, plaintiff prepared such power of attorney and asked defendant to sign it, which he refused to do. Such refusal constituted a breach of the contract by defendant, making it impossible for plaintiff to represent defendant before the Collector and carry to a final conclusion the purpose of his employment. Two days thereafter, plaintiff returned defendant's bank statements, records, etc., to him, and demanded payment for work performed. When such payment was refused, he filed this action in the district court, seeking payment at the rate set out in the contract of employment. Defendant prevailed in the lower court, and plaintiff has duly appealed.

At the trial, plaintiff introduced 13 exhibits consisting, for the most part, of data sheets and work sheets prepared by him in the course of his employment and investigations into defendant's financial transactions. These exhibits include about 110 large sheets of paper of the type generally used for accounting work. They reflect an enormous amount of work done by plaintiff, the performing of which is not denied by defendant.

Only one witness testified for defendant; he was a tax specialist, attorney, and accountant who testified as an expert. It had previously been shown that after defendant breached the contract, he hired another attorney to represent him before the Collector; that such attorney determined defendant's income by computing the excess of bank deposits over withdrawals, and adding to this the amount of interest earned by the 93 loans above referred to. Of course, this method did not take into account other items of income previously uncovered by plaintiff herein. On the basis of such computations, the Collector assessed an additional tax liability of $3,000 against the defendant, which was paid. The tax specialist who testified for defendant said the value of such services was between $250 and $300. However, on cross-examination, he testified in part as follows:

"Q. If you had no records and you were trying to determine a man's tax liability for three years, would you try to compile a record of all of the checks that he had issued during those three years so that you could determine what he spent his money for? A. That's the only way you could do that.

"Q. That's the only way you could do it, isn't it? And if he had no records of his deposits over a three year period, would you try to compile a record of those deposits from the best source obtainable, the bank? A. That's the only place you could.

"Q. And after you have got those deposit slips, and where you found that those deposit slips didn't show the source of the money, in order to make an accurate tax return would you try to make an investigation to find out

where the money came from? A. That would be the procedure."

The methods outlined in the questions above were substantially the same as those used by the plaintiff herein. This witness also admitted that the payment of the $3,000 did not necessarily mean that defendant had paid all the tax he owed, or that he would not have to make further payments later.

At the conclusion of defendant's evidence, plaintiff demurred to the evidence, which demurrer was overruled. At the conclusion of all the evidence, plaintiff moved for a directed verdict in his favor, which motion was overruled. The jury thereafter returned a verdict for defendant, and judgment was pronounced thereon.

One of the assignments of error made by plaintiff is error of the court in failing to sustain plaintiff's motion for a directed verdict in his favor. Since we deem this proposition controlling, we will not discuss herein the other errors alleged.

From the above summary, it is apparent that there was no conflict in the evidence. Plaintiff proved that the contract of employment was entered into; that he performed his duty under the contract with defendant's knowledge; and that defendant, by his lack of co-operation and refusal to execute the power of attorney, made it impossible for him to continue in the employment. *There was absolutely no evidence produced by the defendant in contradiction or denial of these facts.*

The principal argument advanced by defendant that does not go generally to the sufficiency of the evidence is to the effect that plaintiff "rescinded without restoration". In support thereof, he quotes 15 O.S. 1951 §235, which provides in substance that one who elects to rescind a contract must restore to the other party everything of value that he has received from such other party under the contract. As we have heretofore shown, the contract was breached

by defendant, not rescinded by plaintiff, and the argument is therefore inapplicable. Further, the record shows that plaintiff did restore to defendant all of the bank statements, records, etc., that defendant had given to him. Defendant now contends that plaintiff should have "restored" to defendant the data sheets, work sheets, etc., which plaintiff prepared in the course of his work for defendant. It is obvious that plaintiff could not have "restored" to defendant something that the defendant never had in the first place. The work sheets were prepared by plaintiff and represented the result of many hours of work. They were his personal property. He was under no obligation to part with them until he had been paid therefor.

Defendant also argues that plaintiff "stipulated himself out of a quantum meruit recovery by requesting the court to instruct the jury" that plaintiff was entitled to the entire amount sued for or nothing. The stipulation referred to is as follows:

"It is stipulated by counsel for plaintiff and defendant that the Court may instruct the Jury that plaintiff is entitled to collect the entire amount sued for, or nothing."

As is evident, this stipulation, which was entered into after denial of plaintiff's motion for directed verdict, merely amounted to an agreement between the parties as to what might be included in an instruction to the jury. It was not an agreement that plaintiff should collect "all or nothing". Since the trial court was under the positive duty to instruct the jury, if at all, as to all of the law applicable to the case at hand, it is elementary that such stipulation was not binding upon him.

No complaint was made by either party as to the measure of damages embodied in the court's instructions.

It is not alleged, and the record does not show, that the evidence of plaintiff is unreasonable or improbable, or is contrary to other facts in evidence

Under the circumstances shown to exist in this case, the following rule of law is applicable:

"Where the evidence introduced by the plaintiffs makes out the plaintiffs' case, and the defendant introduces no evidence to rebut it, the court should instruct a verdict for plaintiffs." Moore v. Leigh-Head & Co., 48 Okla. 228, 149 P. 1129.

See, also, State v. Strange, 202 Okla. 11, 209 P. 2d 691, wherein this court said, at page 17 of the Oklahoma Reports:

"We have many times held that where the evidence offered by a plaintiff to sustain his case is undisputed, and is not unreasonable or improbable, or contrary to facts and circumstances shown in the record, it is the duty of the trial court to direct a verdict in his favor."

The judgment of the trial court is reversed, with directions to enter judgment for plaintiff.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, CORN, O'NEAL, and BLACKBIRD, JJ., concur. DAVISON, J., dissents.