Emmett LINCOLN, Plaintiff in Error,

v.

Walter WELLS, James Wells, Eliah Wells, Beulah Wells, Paralee Wells Waterfield, and Paralee Wells Waterfield, as Administratrix of the Estate of Susie Freeman, Deceased, Defendants in Error.

No. 38596.

Supreme Court of Oklahoma.

Feb. 23, 1960.

Rehearing Denied March 15, 1960.

Ernest E. Clulow, Jr., Tulsa, for plaintiff in error.

Geo. P. Striplin, and Geo. E. Reeves, Tulsa, for defendants in error.

BLACKBIRD, Justice.

This case involves the purchase by Emmett Lincoln, plaintiff in error, and his Aunt Susie Freeman, now deceased, of an undivided one-half interest in a 40-acre tract of land situated in the vicinity of 81st and East Harvard Streets of the City of Tulsa. Long after the purchase, a controversy arose as to whether they had purchased the interest as tenants in common, or as joint tenants with right of survivorship.

The instrument of conveyance used in their acquisition of title to the reality, pursuant to purchase from one Ruth Kramps, a Colorado resident, was drafted on an ordinary warranty deed form, naming both Lincoln and Mrs. Freeman as grantees, and bearing no writing, or indication whatsoever, that, in the event of the death of either of said grantees, the one who survived was to own the entire interest. The deed was executed on September 15, 1942; and, having rented from the Kramps woman before the purchase, Susie Freeman (a widow) resided on the tract afterward, and until shortly before her death intestate in February, 1954, without surviving children.

After Mrs. Freeman's death, Lincoln locked the house, in which she had resided on the tract, and it remained unoccupied for many months. Thereafter, a real estate dealer evidenced interest in negotiating a sale of the property. Then followed the present controversy between Lincoln and the decedent's brothers and sisters, defendants in error herein, over its ownership.

Upon a petition therefor filed in the county court on November 30, 1955, Paralee Wells Waterfield, plaintiff's mother, a sister of the deceased, was appointed administratrix of Mrs. Freeman's estate; and, thereafter she, acting through Walter Wells, a brother, rented the decedent's home to one Frederick.

On March 26, 1956, Lincoln, as plaintiff, instituted the present district court action against the defendants in error herein, as defendants, alleging, in substance, that, according to an oral agreement between him and Susie Freeman for the purchase of the undivided one-half interest in the subject tract, they were to acquire title to it in such a way that, upon the death of either of them, the one who survived would own the entire undivided one-half interest. The relief prayed for in plaintiff's said petition was that the deed in question be reformed in accord with said agreement, and that his title be quieted to the entire interest. Before the answer date in this district court action, the county court, on April 19, 1957, entered its final decree in the matter of Susie Freeman's Estate, describing the residue of said estate as an undivided one-fourth interest in said realty, and distributing said interest in undivided one-fifth parts to the defendants in error herein, as her heirs, notwithstanding plaintiff's attorney's appearance before said county judge the same day, informing him of plaintiff's claim to said interest.

Thereafter, upon trial of the present district court action, and, after the filing of pleadings on behalf of the decedent's aforementioned heirs, relying on the above described deed, as drawn, and denying that

the deceased had any agreement with Lincoln (as alleged in his petition) for the acquisition of the property by any different form of deed, the court, at the close of the evidence, allowed the parties to submit briefs in support of their respective positions; and, thereafter rendered a judgment, in general terms, for the defendants. After unsuccessful efforts to obtain a new trial, Lincoln perfected the present appeal. Our continued reference to him and to the decedent's brothers and sisters will be by their trial court designations, of "plaintiff" and "defendants", respectively.

In urging reversal of the trial court's judgment, plaintiff's position, generally and in substance, is that said judgment is clearly against the weight of the evidence. He seems to recognize, in his statement of, and argument under, his Proposition I, the character of the burden necessarily assumed by the plaintiff in any action to reform a deed on the ground of mutual mistake, by characterizing it as one of supporting his cause of action by evidence that is "clear, unequivocal, convincing, full, unmistakable and satisfactory, and establishes the facts and mistake to a moral certainty which takes the case out of the range of reasonable controversy * * *", citing Bombarger v. Bloss, 196 Okl. 153, 163 P.2d 551, and other cases. He erroneously assumes, however, that, because his evidence was uncontradicted in certain particulars, he discharged this formidable burden so thoroughly that the trial court's judgment must be reversed as being against the clear weight of the evidence.

While we must agree that there is in the record no testimony directly or categorically contradicting that which plaintiff adduced by various witnesses about statements made to them, or in their presence, by him and Susie Freeman, during her lifetime, to the effect that, as between the two, the one who survived the other was to have the entire interest they had purchased, none of such testimony unequivocally establishes the basis of such an arrangement in any oral agreement entered into by said parties before execution of the deed, except that of the plaintiff, himself, and Ruth Kramps.

For reasons hereinafter indicated, the testimony last referred to cannot be held to warrant reversal of the trial court's judgment. As far as appears from other testimony, Mrs. Freeman and plaintiff may have entered into some kind of an understanding, or loose arrangement, at some time *after* delivery of the deed, to the effect that (despite the fact that the 20-acre interest they had acquired was only an undivided one) a certain 10 acres was to be regarded as hers, and another 10 acres would be regarded as his. Such evidence of an understanding, or agreement, made *after* the deed was executed and delivered is of little, if any, significance in discharging plaintiff's burden of proof, and obtaining the relief he seeks, on the basis of negotiations or agreements had *before* that time, under the rule that all such agreements had before delivery of the deed are merged in it. See Bell v. Little, Okl., 346 P.2d 729.

With reference to some of the facts leading up to the transaction, there can be no doubt or speculation. Ruth Kramps seems to have taken the initiative in effecting the sale. On, or immediately before, September 14, 1942, she drove to the place where Mrs. Freeman and Lincoln were living on North Madison Avenue, in Tulsa, and negotiated the sale with them. There can be no question but that, on that date, a purchase price of $700 for the property was agreed upon, a down payment was made on it, and it was agreed that the three parties would meet the next day, or September 15, 1942, in the office of one F. W. Newman, a Notary Public and real estate dealer, for the closing of the transaction. When this meeting occurred Newman drafted, on a regular printed warranty form, the deed in question, and also two promissory notes in the amount of $200 each, maturing in one and two years, respectively, as well as a real estate mortgage on the property securing payment of the notes. When this was done, both Lincoln and Mrs. Freeman signed the notes and the

mortgage, Ruth Kramps signed the deed, and Newman, as a Notary, executed the acknowledgments on both the deed and the mortgage. It was agreed that Newman should hold the deed, and not deliver it for Ruth Kramps to the grantees until she had notified him that they had paid the two notes they signed jointly for the $400 unpaid balance of the purchase price.

As to what occurred between the four persons at this meeting in Newman's office we have only the testimony of the plaintiff and his witness, Ruth Kramps. Although it might be inferred from plaintiff's use of the word "we" in parts of his testimony, that he and Mrs. Freeman, as well as Ruth Kramps, "had Mr. Newman to ·understand we wanted the deed made out (so that) if anything happened to me it goes to her (Mrs. Freeman), if anything happened to her it goes to me * * *", when interrogated directly concerning the matter, he admitted that neither he nor Mrs. Freeman directed any request, or instruction, to Mr. Newman about the drafting of the deed, or the· character of deed that would be used for the conveyance. Plaintiff's testimony that he told Newman nothing, with reference to any agreement between him and Mrs. Freeman concerning survivorship rights, was corroborated by Ruth Kramps, who testified, by deposition, that plaintiff gave no instructions to anyone. Her deposition conflicts with plaintiff's .testimony, as to whether or not there was any expression from Mrs. Freeman to Mr. Newman at the meeting, in the following excerpt therefrom:

"7th Question: Do you know what type of· deed it was supposed to be?

"Answer: Yes, a survivorship deed.

"8th Question: How do you know this?

"Answer: I heard Mrs. Freeman tell Mr. Newman exactly how it was to be made out. * * *."

When questioned further about Mr. Newman's being instructed to prepare the deed on a survivorship form, Ruth Kramps testified that she herself was the one who so instructed him, saying: "* * * I told Mr. Newman, as Susie asked me *to do this for* her." (Emphasis ours.) This witness' testimony was not only self-contradictory, but, as to when and how much of the purchase price of the realty plaintiff paid, it was in direct conflict with other evidence, including part of the plaintiff's testimony, and the written receipts for the payments that were introduced in evidence. While it is true that the plaintiff testified that, according to the arrangement made the night before the three parties went together to Newman's office "* * * we (supposedly plaintiff and Mrs. Freeman) wanted it fixed so that if anything happened to one, it would go to the other", parts of his testimony were self-contradictory and in conflict with testimony given by defendants' witnesses.

■ In view of the fact that Mrs. Freeman's lips are sealed by death, so that she cannot testify for herself as to her understanding of the agreement entered into with plaintiff, or show whether or not the deed was in accord with it, and, in view of the character of evidence required to prove the mutuality of the alleged mistake (as well as the mistake itself) in an action of this kind (Eason Oil Co. v. Whiteside, 175 Okl. 254, 52 P.2d 35, Bombarger v. Bloss, supra, Am.Jur. Vol. 19, "Equity", Sec. 57, Vol. 45, "Reformation of Instruments", Secs. 117, 118); and, in further view of plaintiff's statements after the transaction both prior and subsequent to Mrs. Freeman's death, and his conduct showing little attention to, or concern for the exclusive ownership of the property he now asserts, until almost a year after the defendant administratrix began to hold it adversely to his present claim (by renting it to Frederick), we cannot say the testimony supporting the plaintiff's claim, and conflicting with the deed, was so clear, satisfactory and free from doubt, as to render clearly against the weight of the evidence as a whole, the decision of the trial judge, who, with his opportunity of seeing and hearing the witnesses testify, was in a better posi·· tion than this court to determine the credi-

bility and the weight to be accorded the testimony. As to the latter, notice Harrell v. Nash, 192 Okl. 95, 133 P.2d 748, 754. See Darden v. Meadows, 259 Ala. 676, 68 So.2d 709, and Ives v. Hanson, N.D., 66 N.W.2d 802, both of which quote with approval the case of Moragne v. Moragne, 234 Ala. 660, 176 So. 455, 456, wherein the court said:

"Courts should use great caution and require a high degree of proof in cases of reformation of written instruments. Johnson v. Sandlin, 209 Ala. 430, 96 So. 223. 'The proof must be clear, exact, and satisfactory that the writing does not express the intention, of the parties, and also as to what the parties did intend the writing should contain.' Lipham v. Shamblee, 205 Ala. 498, 88 So. 569. See, also, 17 Alabama Digest, Release, p. 45. This rule is especially salutary in cases like this one where death has sealed the lips of the party against whom relief is sought."

In the Ives Case (66 N.W.2d at page 807) the court referred to the rules that the trier of facts, whether court or jury, is not bound by the testimony of a witness, even though uncontradicted, especially where he is one of the interested parties; and further said, among other things:

"The weight of evidence is not a question of mathematics, but depends on the effect it has in inducing belief, under all of the facts and circumstances involved."

In this case, as in that one, one of the parties to the deed, as well as the party who drafted it, did not testify. There, the appellate court held that, when the plaintiff's evidence was weighed on the basis of all of the circumstances (the trial court was warranted in considering), "it was clearly within the province of the trial court to determine that it (the evidence) was not so clear, satisfactory and convincing as to warrant reformation." After a thorough examination of the record in this case, we have arrived at a similar conclusion. Ac-

cordingly, we cannot reverse the trial court's judgment as being contrary to law and/or clearly against the weight of the evidence. It is therefore affirmed.