OKLAHOMA CITY, a municipal corporation, Plaintiff in Error,

v.

Richard L. BAILEY, Defendant in Error.

No. 40571.

Supreme Court of Oklahoma.

Feb. 23, 1965.

As Corrected July 6, 1965.

Rehearing Denied July 6, 1965.

Application for Leave to File Second Petition for Rehearing Denied July 27, 1965.

Roy H. Semtner, Municipal Counselor, James G. Hamill, Asst. Municipal Counselor, Oklahoma City, for plaintiff in error.

Keith McMillin, Oklahoma City, for defendant in error.

JACKSON, Vice Chief Justice.

In this case the plaintiff, Richard L. Bailey, sued Milton L. Peaster, a policeman, and Oklahoma City, Oklahoma, as defendants, for personal injuries arising out of an automobile accident on Classen Boulevard in Oklahoma City. Plaintiff's theory for recovery was that the policeman, Peaster, was acting for and on behalf of the City in its corporate, ministerial and proprietary capacity. After verdict and judgment in favor of plaintiff upon this theory the defendant, Oklahoma City, has appealed.

Plaintiff's petition alleged in substance that plaintiff had parked his automobile, headed south, at the curb in the 800 block on North Classen Boulevard, waiting for his passenger to return. That while plaintiff was waiting for his passenger, Lt. Peaster drove a city-owned police car into the rear of plaintiff's car causing severe personal injuries to the plaintiff.

Plaintiff further alleged in his petition that Peaster was employed as Supervisor of the Automobile Parking Ticket Bureau; that for the convenience and economy of the City, defendant, Peaster, was instructed to drive the car to Peaster's home overnight and return it to Peaster's office the next day; and that Peaster was returning the automobile to his office when the accident occurred.

City contends that the trial court should have sustained a demurrer to plaintiff's petition for the reason that the petition does not affirmatively disclose that Peaster and the City were acting in a corporate and proprietary capacity; and that a city's activity is presumed to be in a governmental capacity. Savage v. Town of Lander, 77 Wyo. 157, 309 P.2d 152; 63 C.J.S. Municipal Corporations § 938; and Hayes v. Town of Cedar Grove, 126 W.Va. 828, 30 S.E.2d 726, 156 A.L.R. 702.

We are of the view under our former decisions that plaintiff's petition alleged a cause of action against the City in its proprietary capacity. In Oklahoma City v. Haggard, 170 Okl. 473, 41 P.2d 109, the City maintained its own automobile repair shop. The police car involved in the accident was in the repair shop awaiting repairs to defective brakes. The police chief sent the policeman out on call before the brakes were repaired to pursue a person charged with a felony. In crossing a street intersection at approximately 40 miles per hour the accident occurred. In that case the trial court instructed the jury that the City could not be held liable unless the jury found the City was negligent in failing to repair the brakes, and that such negligence (failure to repair the brakes) was the proximate cause of plaintiff's injuries. In other words if the negligence *causing* the accident was the negligent performance of a proprietary act (repairing automobiles), as distinguished from the activities of a policeman engaged in a governmental function which did not cause the accident, then the plaintiff would recover. The rationale is that if the City's proprietary negligence caused the accident, recovery could be had; but if the City's governmental negligence caused the accident recovery could not be had. Therein we followed the reasoning set forth in Oklahoma City v. Foster, 118 Okl. 120, 247 P. 80, 47 A.L.R. 822, and concluded the trial court's instruction was proper.

In City of Tulsa v. Washington, 206 Okl. 61, 241 P.2d 194, we observed that a city is acting in a proprietary capacity when it maintains its own repair shops for the repair and maintenance of its "governmental" and "proprietary" vehicles. We held therein that the City of Tulsa was acting in a proprietary capacity when its "garbage truck washer" took a garbage truck from its garage to the wash rack (two and one-half blocks from the garage) for the purpose of washing it.

We are of the view that plaintiff's petition, when liberally construed, alleges that Peaster was on a proprietary mission and engaged in a proprietary function in returning the automobile from overnight storage at the time of the accident in question, and that his negligence in the performance of his proprietary function was the proximate cause of plaintiff's injuries. The trial court correctly overruled City's demurrer to plaintiff's petition.

In City's proposition No. 1, it is said that traffic control and police activities are governmental functions, citing City of Lawton v. Harkins, 34 Okl. 545, 126 P. 727, 42 L.R.A.,N.S., 69; Grimes v. City of Henryetta, 208 Okl. 217, 254 P.2d 980; White v. City of Lawton, Okl., 373 P.2d 25; and City of Ardmore v. Hendrix, Okl., 348 P. 2d 497. We agree with that statement. However, the decisive question presented in the instant case is factually whether Peaster was (1) engaged in a governmental function or (2) engaged in a proprietary function at the time of the accident; or whether the accident was caused by "Proprietary Negligence" or by "Governmental Negligence."

City's second proposition for reversal is that the verdict is contrary to the law and the evidence. In argument it is said that *"all* the testimony from the witnesses indicates when the accident occurred Lt. Peaster was on duty as a policeman, driving a police vehicle and performing police functions." From the Oklahoma decisions above discussed it is apparent that it is immaterial that Peaster was in uniform and driving a police vehicle if in fact he was performing a proprietary function; returning an automobile from overnight storage.

Plaintiff's evidence follows the allegations set forth in his petition and tends to show that the City owns 50 or 60 more automobiles than can be kept at night at the place provided for that purpose near City Hall; that the City requested or permitted some of those to whom the cars were assigned, including Peaster, to keep them at their homes overnight; that in such cases, the city policeman or employee in charge of the automobile was directed to store it in his garage at night; to return it in the morning; and to report his address to the Municipal Garage when on vacation or off duty for any unusual length of time.

Before noticing Peaster's testimony as to the cause of the accident we have found it helpful to first notice the answers filed by the City and by Peaster. In City's answer it was alleged in substance:

"Defendant, City of Oklahoma City, alleges that on or about the 6th day of April, 1960, defendant, Milton E. Peaster, was employed by the City of Oklahoma City in the capacity of a Police Officer; and that on or about said date, defendant, Peaster, was a Police Lieutenant in charge of the Parking Violations Bureau.

"For further answer and further defense, Defendant, City of Oklahoma City, alleges that the acts of misfeasance and malfeasance complained of in plaintiff's petition are acts or duties imposed upon said defendant by law and that, as such, the said acts complained of are governmental in nature and do not give rise to a cause of action in favor of the plaintiff and against the defendant, City of Oklahoma City."

The first paragraph of the answer, as quoted, alleges that Peaster was a policeman on the day of the accident and was in charge of the Parking Violations Bureau. This is "job descriptive", but if it indicates what Peaster was doing at the time of the accident it can only be surmised that he was at work performing his duties as officer in charge of the Parking Violations Bureau. The second paragraph of City's answer, as quoted, is in the nature of a demurrer to plaintiff's petition and alleges no facts tending to show that Peaster was engaged in a governmental activity.

For his answer Peaster filed a general denial; admitted there was an accident; alleged that he was without fault; and adopted the defenses and matters contained in the City's answer.

Peaster testified that on the morning of the accident he left his home in the Northwest part of the City and went by the De Ville Motel to check on the parking situation in response to complaints received the previous day. After this mission was accomplished Peaster drove south on Classen Boulevard in the direction of his office. He testified that as he was leaving the signal light at Northwest 10th Street and Classen Boulevard going south he noticed a car through his rear vision mirror also traveling south "astraddle of the center lane and the first lane or the curb lane." He testified he did not know whether this automobile would keep on coming and hit him, as Peaster was driving in the first lane, or whether the driver was going to pull around him. Peaster suspected that the driver might be driving while drunk and as this driver passed Peaster, Peaster was observing this driver to see if he might be a drunk driver. "From his actions, it looked like he might be a drunk driver." How-

ever, Peaster was unable to decide if anything was wrong with this man's driving as he went by. At about the time the suspected drunk driver passed, Peaster observed Plaintiff's car but it was too late to stop or turn aside.

We are of the view that Peaster left his home on the day of the accident engaged in a dual mission. First, proprietary, to return the automobile to its down town parking place, and second, governmental, to check on parking facilities at Motel De Ville. We are of the further view that the governmental mission of checking on parking facilities had been accomplished when Peaster left the De Ville Motel, and that his mission was proprietary to return the car to its parking lot near City Hall as he travelled south on Classen Boulevard.

■ If Peaster had abandoned his proprietary mission at Northwest 10th and Classen and pursued a drunk driver and had been involved in an accident while in pursuit it seems probable that his mission would have been governmental with governmental immunity. However, in the instant case Peaster did not abandon his proprietary mission of returning the automobile to its parking lot, and we think it was a question for the jury to determine whether Peaster's attention was momentarily diverted in the performance of his general duties of a policeman, or by other causes. In other words it was for the jury to determine factually whether the accident arose out of and was proximately caused by Peaster's proprietary duties, or whether it arose out of and was proximately caused by Peaster's governmental duties.

In this connection it is to be noted that Peaster's testimony that he was, in his capacity as a policeman, watching a "suspected" drunk driver was uncontradicted by other testimony.

We are aware of the rule that where a party by evidence makes out his case and his opponent introduces no evidence to rebut it, that a verdict should be directed. Moore v. Leigh-Head & Co., 48 Okl. 228,

149 P. 1129. In Geschwind v. Brorsen, 208 Okl. 683, 258 P.2d 619, we held that where the evidence offered by plaintiff to sustain his case is undisputed, and is not unreasonable or improbable, or contrary to facts and circumstances shown in the record, it is the duty of the trial court to direct a verdict in his favor. However, in the third paragraph of the syllabus in Lincoln v. Wells, Okl., 350 P.2d 589, we held that facts and circumstances may be considered in determining the weight and credibility of testimony, and, though it be uncontradicted by other testimony, it is not necessarily binding on the trier of facts. See also Alexander v. Gee, Okl., 352 P.2d 915. These cases serve to support the conclusion that no definite and fixed rule can be announced to serve in all cases. In this connection see 88 C.J.S. Trial § 214 b; 53 Am. Jur. Trial, Secs. 359, 361, and 367; 62 A.L. R.2d 1192.

■ In this case the City's defense that Peaster was distracted by a "drunk driver" did not come into this case until he took the stand as a witness. He was interested as a defendant and possibly in "job security" as an employee of the City. We are unable to determine whether the jury disbelieved this witness, or whether they concluded that the accident arose out of and was caused by his proprietary function in returning the automobile to the parking lot. Under these circumstances we are unable to say the trial court erred in refusing to direct a verdict for the City, and in refusing to enter judgment for the City notwithstanding the verdict.

In City's Proposition No. 3 several arguments are presented. It is argued that the trial court erred in admitting improper testimony, and in its statement of the issues in its instructions to the jury. We have carefully considered these arguments and find them without sufficient merit to justify reversal.

■ City further contends that the trial court erred in giving Instructions Numbered 11 and 12. Instruction No. 11, requested by plaintiff, told the jury in effect

that if Peaster's function in taking the automobile home at night was partly proprietary in nature and partly governmental, that this would not necessarily prevent recovery against the City; that if the function (taking the automobile home) was substantially of a proprietary nature the City could not escape liability. We assume that this instruction was requested because Peaster was on call 24 hours a day as a policeman and because he occasionally checked on parking complaints and stop signs on the way to and from his home. We find no error in this instruction under the issues framed by the pleadings.

In Instruction No. 12, the jury was told if they found Peaster was acting for the City at the time of the accident in its proprietary capacity, as alleged, then the City would be liable for Peaster's negligence, if any, if it caused the accident. We find no error in this instruction since Instruction No. 13 told the jury that if Peaster was performing duties as a policeman at the time of the accident then there verdict should be for the City.

Complaint is made that these instructions submitted a legal question to the jury. That is, that the court let the jury determine whether Peaster was performing a governmental or proprietary function. We are of the view that Instructions Nos. 11 and 12 were responsive to plaintiff's evidence and theory of proprietary activity as the proximate cause of the accident, and that Instruction No. 13 was responsive to Peaster's testimony that his police duties were responsible for the accident.

The judgment of the trial court is affirmed.

DAVISON, JOHNSON, WILLIAMS, BLACKBIRD and IRWIN, JJ., concur.

HALLEY, C. J. and BERRY, J., dissent.