Paul R. HENDERSON, and Velma Henderson, Appellees,

v.

Gloria Sue HENDERSON, Appellant.

No. 51093.

Court of Appeals of Oklahoma, Division 2.

April 24, 1979.

Released for Publication by Order of Court of Appeals May 17, 1979.

R. Burl Harris, Ada, for appellees.

Loyde H. Warren, and Steve L. Perry, Oklahoma City, for appellant.

BRIGHTMIRE, Judge.

Paul Henderson brought this action [1] against his former daughter-in-law to reform the description in a deed executed a few years earlier which, it is claimed, unintentionally included a steel hay barn. After hearing the evidence, the trial court granted the requested relief, and Gloria Henderson appeals contending that plaintiff's evidence was qualitatively insufficient to warrant the reformation. We affirm.

I

For several years, plaintiff and his wife owned some 49 acres of Pontotoc County land jointly with their son, Olan Ray, and his wife Gloria Sue Henderson. Among other things, there existed on the acreage a large steel hay barn which plaintiff paid to have built in the summer of 1972.

On October 2, 1974, the two pair of owners exchanged deeds dividing the tract in kind. The deed from plaintiff and his wife to Olan and Gloria conveyed the east 15 acres of a 20-acre tract by means of a description thought by plaintiff and his son to refer to a western boundary located just east of plaintiff's steel barn—a location

---

1. Actually, his wife is joined with him as a pro forma party plaintiff, but for convenience we will refer to Paul Henderson as if he were the only named plaintiff.

which would place the barn on plaintiff's adjoining five acres.

Groundwork for the instant controversy was laid when a few months later Gloria sued Olan for a divorce. One was granted in May 1975, and Gloria was awarded the 15 acres in question. Not long thereafter, Gloria and "her boyfriend" were seen building a fence west of the barn which inhibited plaintiff's access to the barn. Plaintiff protested the exclusion, offered a land trade compromise, and, when this was rejected, filed this lawsuit.

## II

Defendant first argues that the burden of proof resting on plaintiff in his reformation effort is one of the heaviest imposed by law requiring evidence that is "full, clear and unequivocal, and convincing as to the mistake and its mutuality . . . [and which will] establish the facts to a moral certainty . . .," as it was put in the court's second syllabus in *Lincoln v. Wells,* Okl., 350 P.2d 589 (1960), and plaintiff has not borne this burden. Paul Henderson, she says, is a man with 44 years of experience in dealing with land transactions, and it is inconceivable that he could have been mistaken about the exact location of the steel barn in question. Moreover, she continues, whatever else may be said about the evidence, it is, in so far as it relates to a mistake on plaintiff's part, contradicted by her own testimony to the effect that plaintiff told her before he filed suit he knew the barn was on her land and wanted to trade her out of it or buy it. She concludes that under these circumstances the trial court could not rationally find that the necessary reformational facts had been established "to a moral certainty."

■■ The argument has a weakness. In the first place, the mere existence of contradictory evidence in the record does not prevent some of it from being clear, full, unequivocal or convincing, nor does the need to establish facts to a "moral certainty" require proving their existence with absolute certainty. As used in context of the quality-of-proof rule in question, the term "moral certainty" does not relate to ethics or that which is morally right but to certainty which is "based on strong probability." [2]

■ In the second place, our analysis of the evidence differs somewhat from that of defendant. We do not share, for instance, her confidence that her testimony forecloses a finding of a strong probability that the parties harbored a mutual mistake as to the barn's location when the deed was signed— not even when coupled with the fact that a dispute did not surface or ripen into litigation until after the divorcing court awarded the 15 acres to defendant.

There are two principal reasons for this conclusion. First of all, we do not view defendant's testimony as being all that inconsistent with the existence of a mutual mistake of fact at the time the deed was executed. Neither the fact that plaintiff made a post divorce offer to trade or pay for the land under the barn nor the fact that a dispute did not materialize until after defendant acquired the property is inconsistent with an earlier mutual mistake. Both circumstances can comfortably co-exist with the mistake and are plausibly explainable on the basis of other evidence that plaintiff's use of the barn was not interfered with until after defendant was given the land, and it was not until defendant erected a fence cutting off plaintiff's access to his hay that he had occasion to investigate and discover the barn was not on his land. His attempt to resolve the controversy out of court at that point was a manifestation of common sense rather than a fatally tacit admission of predeed knowledge.

Gloria, it is true, did say that Olan Henderson had told her before they were divorced that the barn belonged to them. She did not say, however, when he said this or why. Probity of the alleged hearsay suffers not only because it is at war with Olan's sworn testimony but also because it conflicts with other facts and circumstances

**2.** Webster's New Twentieth Century Dictionary, Unabridged 1168 (2d ed. 1964).

predating the divorce, not the least of which is the existence of a cancelled check for $2,500 issued by plaintiff as payment for the barn.

### III

 Considering the evidence as a whole, we are inclined to agree with the trial judge—who had the added significant advantage of observing the demeanor of the witnesses—that the strong probability is that the barn belongs to plaintiff and that at the time the land-divided deeds were exchanged all parties thought it was located on the five acres deeded to plaintiff. And, defendant's suggestion to the contrary notwithstanding, decreeing reformation of the deed under these circumstances resulted in achieving fulfillment of the actual agreement of the parties rather than in making a new bargain for them.

The decree entered below is affirmed.

BACON, P. J., and NEPTUNE, J., concur.