STATE ex rel HURD, Respondent, v. BLOMSTROM, et al., Appellants

(37 N. W.2d 247.)

(File No. 9018. Opinion filed April 23, 1949.)
Rehearing Denied May 18, 1949.

**Clarence E. Talbott,** of Winner, and **Davenport, Evans & Hurwitz,** of Sioux Falls, for appellants.

**D. G. Grieves,** of Winner, for Respondent.

**Dorsey, Colman, Barker, Scott & Barber,** of Minneapolis, Minn., amici curiae.

SICKEL, J. This is a mandamus proceeding. Relator is a resident, elector and taxpayer of the City of Winner. Defendants are the Mayor and Board of Aldermen of the City of Winner. On March 15th, 1948, there was filed in the office of the city auditor a petition for the enactment and submission to the voters of a proposed ordinance granting to the Rosebud Electric Association, a corporation, the right to continue to occupy the streets, alleys and public places in the city for the operation of a public utility for the production, transmission, distribution and sale of electricity. The petition was presented to the city council on April 19th, 1948, and was denied. Thereafter the circuit court issued its alternative writ of mandamus, ordering

the city council to grant the petition or show cause for not doing so. Defendants answered, admitting their failure to grant the petition, stating their reasons for such failure, and asking that the proceeding be dismissed on its merits. The case was tried on May 13th, 1948, and the peremptory writ of mandamus was issued commanding that defendants enact the proposed ordinance and submit it to the voters of the city. Defendants appealed from the judgment.

The record in this case shows that on April 14th, 1947, the council adopted an ordinance designated as Number 224. This ordinance provided for the construction, acquisition and operation of a municipal light, heat and power system and the issuance of revenue bonds to defray the cost thereof. It was submitted to the voters of the municipality, and was approved by more than sixty percent of the electors voting thereon. Thereafter it was published and became effective. Then the council adopted another ordinance designated as Number 229. This ordinance fixed the form of the bonds, provided details for the operation and maintenance of the system, the administration of the income and revenues, and provided: "Section 6. For the additional security of the bonds herein authorized the city hereby covenants and agrees to and with the holders thereof from time to time as follows: (b) It * * * will not establish or authorize any other plant or system for supplying like services in competition therewith and will not grant or renew any franchise or license to a competing light and power system or company, * * *."

The above ordinance was not submitted to the voters of the municipality.

Appellants contend that the provision of ordinance Number 229, quoted above, is a valid contractual obligation of the city with the bondholders; that the grant of a franchise to the Rosebud Electric Association as proposed by the initiated ordinance would impair the obligation of that contract, and would be void; that therefore the petitioner was not entitled to the peremptory writ of mandamus. Respondent contends that the city lacked the power to contract by ordinance with the bondholders for the exclusion of a com-

petitive system and even if such power existed, it could not become effective until the ordinance containing the agreement had been submitted to and approved by the voters of the municipality.

■ Appellants rely upon SDC 45.2416 which states that the city may "provide by such ordinance * * * for the security of bondholders as the governing body may deem necessary." This presents the question of whether the phrase "such ordinance" refers to the ordinance required by SDC 45.2402. In their argument appellants contend that "such" should be construed as meaning "an". "An" is the indefinite article meaning "any". "Such" is an adjective meaning the one previously indicated, characterized or specified. Webster's International Dictionary, Second Edition. The ordinance previously indicated is found in SDC 45.2402. The effect of SDC 45.2416 is to authorize the city to include a provision for security of bondholders in the bond ordinance referred to in and required by SDC 45.2402. That statute expressly provides that: "no such bonds shall be issued until authorized by an ordinance duly adopted * * * nor until such ordinance has been submitted to the voters of such municipality * * * and sixty per cent of the electors voting thereon have voted in favor of such ordinance * * *". This statute prohibits the council from making commitments on behalf of the city, to the bondholders, without a vote of the electors of the city.

■ SDC 45.2402 also provides: "* * * no such money shall be borrowed and no such bonds shall be issued until authorized by an ordinance duly adopted, specifying the proposed undertaking. * * *". The council, on behalf of the city, has agreed by ordinance that the city shall grant no franchise to a competitive utility. The agreement is an "undertaking" as that term is used in SDC 45.2402 and required the approval of the voters of the city. Since no such approval has been obtained the undertaking by the council is ultra vires. Whether the council can by ordinance, even with the approval of the electors, bind the city to grant no franchise to a competitive utility, thereby vesting in the city an exclusive right, we need not decide.

Chapter 45.24 does not require that all matters pertaining to the contract and the bond issue shall be included in a single ordinance, and conceivably the council could pass a supplemental ordinance, but the statute does require that any ordinance affecting the obligations of the city and the rights of the bondholders, as distinguished from measures which are purely administrative, are subject to the provisions of SDC 45.2402 and must be submitted to a vote of the electors.

■ Appellants' brief contains this statement: "The remedy of Relator and the persons signing the petition which was filed by the Relator, if they were dissatisfied with Ordinance 229, was to have invoked the referendum within twenty days," and appellants claim that respondent is therefore estopped to question the validity of the ordinance. Estoppel must be plead to be available as a defense. McQueen v. Bank of Edgemont, 20 S. D. 378, 107 N. W. 208; Smith v. Cleaver, 25 S. D. 351, 126 N. W. 589. The settled record discloses that appellants did not plead estoppel, there are no findings of fact, conclusions of law, or assignments of error on the subject. Nevertheless, we might as well call attention to the fact that it was the duty of the council, not the respondent, to submit the ordinance to a vote of the electors.

■ After this action was set for oral argument on this appeal the legislature enacted House Bill 223, approved March 5, 1949. That Act amends SDC 45.0406 so as to provide that the municipality shall not "establish, authorize, or grant a franchise for the operation of any other utility for supplying like products or services in competition therewith." The Act also contains a legalizing section relating to revenue bonds issued and ordinances adopted by municipalities pursuant to SDC 45.24. That section reads as follows: "Section 11. That in all cases where proceedings have been taken by any municipality, prior to the effective date of this act, with reference to the acquisition, establishment, equipment, maintenance, operation, extension or improvement of any utility and the issuance of revenue bonds to defray the cost thereof, in accordance with the pro-

visions of Chapter 45.24 of the South Dakota Code of 1939, as hereinabove amended, such proceedings and all such revenue bonds heretofore issued pursuant thereto and all covenants contained in said bonds and in the ordinances and resolutions adopted by the governing body with reference thereto are hereby legalized and declared valid, and all such bonds hereafter issued pursuant to said proceedings so taken shall, when sold and delivered in accordance with law, be valid and binding special obligations of such municipalities as provided in said Chapter 45.24 as hereinabove amended." Appellants contend that the emergency clause contained in the above Act is valid, that the Act became effective on March 5, 1949, the date of its approval, and that it should be considered by this court in the disposition of the appeal. Respondent contends that the questions regarding the effect of House Bill 223 were not presented to nor decided by the circuit court; that no error of the circuit court has been assigned relative to that measure, and that the judgment should be affirmed. Counsel for respondent is correct in these contentions. Regular procedure would require that this case be remanded to the circuit court for a determination of these questions after which they could be reviewed on a second appeal to this court. Since no issue of fact is involved the remand of the case, retrial in the circuit court and a second appeal would cause additional delay and expense without serving any purpose. The issues of law have been briefed with much care by appellants and respondent and, therefore, we shall dispose of them on this appeal.

 The validity of the emergency clause depends upon whether the Act was necessary for the "support of the state government and its existing public institutions". Const. Art. III, § 1; Hodges v. Snyder, 43 S. D. 166, 178 N. W. 575. A municipal corporation possesses a dual character. "It is vested with powers of a governmental character for the administration of general laws of the state * * *". That is, "* * * for the purpose of carrying into effect the functions of government" and also for "the performance of corporate acts which have relation to the proprietary or ministerial

affairs of a municipality, * * *." Jensen v. Juul, 66 S. D. 1, 278 N. W. 6, 115 A. L. R. 1280. It has been said that if a municipal corporation "is made, by the state, one of its instruments, or the local depository of certain limited and prescribed political powers, to be exercised for the public good in behalf of the state rather than for itself" the function is governmental. Also that "The governmental functions of a municipal corporation are those conferred or imposed upon it as a local agency, to be exercised not only in the interest of its inhabitants, but also in the advancement of the public good or welfare as affecting the public generally." However, if the powers are conferred, not primarily or chiefly in the interest of the state at large, but for the private advantage of the incorporated community, they are proprietary. 37 Am. Jur. Municipal Corporations, § 114.

■ In operating a municipal light and power system under authority of SDC 45.24 the corporation acts in a proprietary rather than a governmental capacity. City of Chicago v. Ames, 365 Ill. 529, 7 N. E.2d 294, 109 A. L. R. 1509; Travelers' Ins. Co. v. Wadsworth, 109 Ohio St. 440, 142 N. E. 900, 33 A. L. R. 711.

■ We, therefore, hold that House Bill 223 is not necessary for the support of the state government and its existing institutions and that the emergency clause is invalid.

Judgment affirmed.

ROBERTS, RUDOLPH and HAYES, JJ., concur.

SMITH, P. J., concurs in result.