369 So.2d 410 (1979)
UNITED STATES FIDELITY AND GUARANTY COMPANY, a Maryland Corporation, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Foreign Corporation, and Nelida Arevalo, Appellees.
Nos. 78-618, 78-1384.
District Court of Appeal of Florida, Third District.
April 3, 1979.
Knight, Peters, Pickle, Niemoeller & Flynn and Marco B. Loffredo, Miami, for appellant.
Kuvin, Klingensmith & Lewis and R. Fred Lewis, Coconut Grove, Genden & Bach, Miami, for appellees.
Before SCHWARTZ, J., and CHARLES CARROLL (Ret.), and EZELL, BOYCE, F., Jr., (Ret.), Associate Judges.
SCHWARTZ, Judge.
United States Fidelity and Guaranty Company appeals from a summary final declaratory judgment which determined that the appellee Nelida Arevalo had the right to arbitration of her underinsured motorist claim, and which awarded her attorney's fees under Section 627.428(1), Florida Statutes (1975). We affirm.
The facts are undisputed. Mrs. Arevalo is the wife and resides in the household of *411 Roberto Arevalo. As such, she is an insured under his automobile policy with U.S.F. & G. which provides for $25,000 in liability and uninsured-underinsured motorist coverage. After Mrs. Arevalo was involved in an automobile accident allegedly caused by the negligence of a driver named Gutierez who had a $10,000 policy with State Farm, she duly filed a demand for arbitration under the UM provisions of the U.S.F. & G. policy. U.S.F. & G. then filed this action against Mrs. Arevalo, seeking a declaratory judgment that she was required to pursue State Farm's $10,000 limits before proceeding with her underinsured coverage claim against U.S.F. & G. Mrs. Arevalo counterclaimed for an order compelling arbitration and moved for summary judgment on the legal issue presented by the pleadings. U.S.F. & G. resisted the motion by submitting affidavit evidence that Mrs. Arevalo's attorney had demanded $5,000 in order to settle her case from a State Farm adjuster, of which $2,500 was proposed to be secured from State Farm, and $2,500 from U.S.F. & G.[1] The trial court nevertheless granted Mrs. Arevalo's motion, entered summary judgment in her favor requiring U.S.F. & G. to proceed to arbitration, and granted attorney's fees for the services rendered to her in this action. On this appeal, U.S.F. & G. challenges both the decision on the merits and the fee award. We reject its contentions and uphold both aspects of the judgment under review.
The law as to the right of an underinsured motorist coverage claimant to proceed to arbitration is now well-established to the contrary of the appellant's position. When, as here, the third party's limits are less than the UM coverage provided by the insured's own policy, underinsured motorist coverage is ipso facto provided pursuant to the terms of Section 627.727(2)(b), Florida Statutes (1975); a person thus-insured has the absolute right to arbitration of that claim without first resorting to an action against, or achieving settlement with the third-party tortfeasor which exhausts the "underinsurance" available to him.[2] We have squarely so held in Liberty Mutual Ins. Co. v. Reyer, 362 So.2d 390 (Fla. 3d DCA 1978), Arrieta v. Volkswagen Ins. Co., 343 So.2d 918 (Fla. 3d DCA 1977), and Government Employees Ins. Co. v. Friedman, 344 So.2d 288 (Fla. 3d DCA 1977). The determinative effect of these decisions upon the case at bar is not altered in any way by the evidence of the alleged settlement negotiations introduced by the insurer below. Even an actual settlement, much less the mere demand involved in this case, does not fix the "value" of injuries actually sustained by an insured. U.S. Fidelity & Guaranty Co. v. Gordon, 359 So.2d 480 (Fla. 1st DCA 1978); Brooker v. Nationwide Mutual Ins. Co., 207 So.2d 486 (Fla. 1st DCA 1968), cert. denied, 212 So.2d 869 (Fla. 1968). Under the cited cases, the appellee has a presently-existing right to have that issue  as well as the liability of the underinsured motorist  determined through the contractually-provided means of arbitration. In entering summary judgment against the carrier, the trial court correctly so held below.
The somewhat more difficult problem presented by the attorney's fee question arises because of the language employed by the supreme court in Roberts v. Carter, 350 So.2d 78 (Fla. 1977). There, after directly holding that Section 627.428(1), Florida Statutes (1975), does not apply to an injured person who litigates a coverage issue against the carrier for the tortfeasor who has injured him, the court went on to say, at 350 So.2d 79:
"To eliminate any remaining confusion, we now reaffirm Wilder and hold that an award of attorney's fees under Section 627.428(1) is available only to the contracting insured, the insured's estate, specifically named policy beneficiaries, and third parties who claim policy coverage by assignment from the insured." [e.s.]
*412 Cf. American Home Assurance Co. v. City of Opa Locka, 368 So.2d 416 (Fla. 3d DCA 1979). U.S.F. & G. argues that Mrs. Arevalo does not qualify under this statement. Although it admits that she is in fact "insured" under its policy as a resident spouse of its named insured, it contends that she was not "the contracting insured" in the sense that it was her husband, rather than she, who directly contracted with the company and presumably paid the premium for the policy.[3]
We do not agree with this interpretation of the Roberts decision.[4] It seems obvious to us that, in the context in which the statement was made,[5] the term "contracting insured" refers to all claimants who have a direct first party contractual relationship with the carrier and are thus insured under the policy itself, as opposed to the third party tort claimants actually involved both in Wilder, which was specifically reaffirmed in Roberts, and in Roberts itself. This conclusion is based predominantly upon the fact that the very statute interpreted in Roberts, Section 627.428(1), provides for fees to be awarded whenever a judgment is rendered, not for "the" or "the contracting" insured, but "... in favor of an insured or the named beneficiary under a policy ..." [e.s.] In this sense, the word "an" means "any." Deschane v. McDonald, 86 N.W.2d 518 (N.D. 1957); People v. One 1940 Buick Sedan, 71 Cal. App.2d 160, 162 P.2d 318, 320 (1945); State ex rel. Hurd v. Blomstrom, 72 S.D. 526, 37 N.W.2d 247, 249 (1949). Its use precludes acceptance of U.S.F. & G.'s argument that only the single particular insured who deals directly with the carrier is covered by the statute. Taminski v. Administrator, U.C.A., 168 Conn. 324, 362 A.2d 868 (1975); Brooks v. Zabka, 168 Colo. 265, 450 P.2d 653 (1969). The Roberts decision specifically emphasizes the statutory language and quotes with approval at 350 So.2d 79 from Wilder v. Wright, 269 So.2d 434, 436 (Fla. 2d DCA 1972) to the effect that
"The purpose of the statute is to discourage contesting of valid claims of insureds against insurance companies . . and to reimburse successful insureds reasonably for their outlays for attorney's fees when they are compelled to defend or to sue to enforce their contracts . ." [e.s.]
Moreover, there is nothing in the Roberts language which would even faintly indicate that, merely by using the word "contracting," the supreme court intended to overrule the countless Florida decisions which, applying the clear terms of the statute, have virtually as a matter of course awarded fees to omnibus and additional insureds such as Mrs. Arevalo.[6] E.g., Main Ins. Co. v. Wiggins, 349 So.2d 638 (Fla. 1st DCA 1977); Dawson v. Blue Cross Association, 293 So.2d 90 (Fla. 1st DCA 1974); Allstate Ins. Co. v. Chastain, 251 So.2d 354 (Fla. 3d DCA 1971), cert. disch. 263 So.2d 578 (Fla. 1972); First National Ins. Co. of America v. Devine, 211 So.2d 587 (Fla. 2d DCA 1968).[7] There is no basis for ascribing such a sweeping effect to a single, perhaps inadvertently *413 employed word, even one which appears in an opinion of our highest court. State ex rel. Garland v. West Palm Beach, 141 Fla. 244, 193 So. 297, 298 (1940). In accordance with this view, this court, in an opinion rendered after Roberts, specifically held that an omnibus insured is entitled to fees under Section 627.428(1). Smith v. Conlon, 355 So.2d 859 (Fla. 3d DCA 1978); see also, e.g., Rodriguez v. Travelers Ins. Co., 367 So.2d 687 (Fla. 3d DCA 1979). We do so again.[8]
Affirmed.
NOTES
[1] No such settlement was ever effected.
[2] Indeed, under a standard provision of these policies, a settlement or judgment secured without the permission of the UM insurer would effectively forfeit UM coverage entirely. Sena v. State Farm Mutual Ins. Co., 305 So.2d 243 (Fla. 3d DCA 1974).
[3] It is also contended that she is not a "specifically named policy beneficiary," both because she is not referred to by name in the policy, and because the "beneficiary" language in both Roberts and the statute refers to life insurance situations, rather than a liability or indemnity policy such as the one involved here. Since we hold that Mrs. Arevalo is the "contracting insured," we need not decide whether she is also a "specifically named policy beneficiary." But see Industrial Fire & Casualty Co. v. Jones, 363 So.2d 1168, 1170 (Fla. 3d DCA 1978) (resident spouse a "named insured" though not designated by first and last names in policy).
[4] As applied to a situation such as this, it is apparent that the language in Roberts upon which the carrier relies is dictum. There can be no doubt, however, that supreme court dictum is, to say the least, most persuasive to district courts of appeal. Horton v. Unigard Ins. Co., 355 So.2d 154, 155 (Fla. 4th DCA 1978). The only real issue, then, is the proper interpretation of the dictum in question.
[5] See Ward v. Baskin, 94 So.2d 859, 860 (Fla. 1957).
[6] The entitlement of all first-party insureds to fees under § 627.428(1), Fla. Stat. (1975), is so well-settled that the cases rarely even refer to the subject; those which do, assume the point without discussion.
[7] The appellant's view of the effect of the Roberts decision would likely result in the unavailability of fees to an employee or his dependent who claims under a group accident or health policy, since the employer would ordinarily be the only eyeball-to-eyeball "contracting" party with the carrier. But see Segelstrum v. Blue Shield of Florida, Inc., 233 So.2d 645 (Fla. 2d DCA 1970).

Moreover, as applied to the UM question presented in this case, the appellant's position runs directly contrary to the policy embodied in the Florida decisions which hold that
"The coupling of uninsured motorist coverage with family protection coverage in an automobile liability policy has made each member of a family an insured under each such policy purchased by any family member." [e.s.]
Travelers Indemnity Co. v. Powell, 206 So.2d 244, 246-247 (Fla. 1st DCA 1968); Butts v. State Farm Mutual Auto. Ins. Co., 207 So.2d 73, 75 (Fla. 3d DCA 1968); Mullis v. State Farm Mutual Auto. Ins. Co., 252 So.2d 229 (Fla. 1971). In each of these cases, incidentally, attorney's fees were recovered by the successful additional or omnibus insured.
[8] To the extent that Aetna Life Ins. Co. v. Sievert, 361 So.2d 747 (Fla. 1st DCA 1978) and Aetna Life & Casualty Co. v. Stanger, 367 So.2d 728 (Fla. 4th DCA 1979), express contrary views, we simply do not follow those decisions. We venture to suggest that these cases may be in direct conflict with Roberts itself, on the ground that they accept Roberts as controlling authority in situations materially at variance with that decision. McBurnette v. Playground Equipment Corp., 137 So.2d 563 (Fla. 1962).