826 So.2d 998 (2001)
RELIANCE INSURANCE COMPANY as Assignee, Appellant,
v.
TRANSAMERICA INSURANCE COMPANY, a California Corporation, Appellee.
No. 3D99-0503.
District Court of Appeal of Florida, Third District.
January 10, 2001.
Mintz, Truppman, Clein & Higer, P.A., and Michael J. Higer, Miami; John G. Crabtree, Ocala, for appellant.
Evelyn C. Tombers; Powers, McNalis, Moody & Groelle, and Daniel M. McNalis, Lake Worth, for appellee.
Before COPE, GREEN and SORONDO, JJ.
*999 COPE, J.
Reliance Insurance Company appeals a summary judgment in favor of appellee Transamerica Insurance Company. We affirm.

I.
Harbor Island Spa (the "Spa") was damaged during Hurricane Andrew. The Spa had primary insurance coverage through Reliance and excess coverage through Transamerica. The coverage limit under the primary policy was $10 million and the limit under the excess policy was $40 million. The primary carrier rejected a claim filed by the Spa for the policy limits.
The Spa sued the primary and excess carriers seeking $20 million in coverage. The primary carrier defended the lawsuit alleging that the amount of the damages suffered by the Spa was less than $10 million and that the Spa's claim was fraudulent.
In 1995, the Spa and the primary carrier reached a settlement agreement. Under the terms of the agreement, the primary carrier paid $9.85 million. In exchange, the Spa released the primary carrier and assigned to the primary carrier the Spa's claim against the excess carrier for the amount of hurricane damage that exceeded $10 million. Pursuant to the assignment the trial court entered an order substituting the primary carrier as the plaintiff.
The primary and excess carriers filed cross motions for summary judgment on the excess carrier's affirmative defenses, which included an assertion that the settlement had not legally exhausted the primary policy. The trial court denied summary judgment on the excess carrier's exhaustion claim but granted summary judgment for the excess carrier finding that (1) the assignment violated public policy and (2) the primary carrier was judicially estopped from pursuing a claim against the excess carrier.

II.
The excess carrier argues that the primary policy was not exhausted by the settlement. The primary policy provided $10 million in coverage. Under the settlement, the primary carrier paid $9.85 million, which is $15,000 less than the policy limit.
The excess insurance policy provides coverage "only after all primary insurance is exhausted." Since the primary carrier paid $15,000 less than the primary insurance limit, the excess carrier argues that the primary insurance was not exhausted and the excess carrier owes nothing. We reject this argument.
We align ourselves with Zeig v. Massachusetts Bonding & Ins. Co. ., 23 F.2d 665 (2d Cir.1928), the leading case in this area. In Zeig, the insured had settled a claim for $6,000 even though the primary insurance policy limit was $15,000. The Zeig court said:
The defendant argues that it was necessary for the plaintiff actually to collect the full amount of the policies for $15,000, in order to `exhaust' that insurance. Such a construction of the policy sued on seems unnecessarily stringent. It is doubtless true that the parties could impose such a condition precedent to liability upon the policy, if they chose to do so. But the defendant had no rational interest in whether the insured collected the full amount of the primary policies, so long as it was only called upon to pay such portion of the loss as was in excess of the limits of those policies. To require an absolute collection of the primary insurance to its full limit would in many, if not most, cases involve delay, promote litigation, and prevent an adjustment of disputes which is both convenient and commendable. A result harmful to the insured, and of no rational advantage to the insurer, ought only *1000 to be reached when the terms of the contract demand it.
23 F.2d at 666. The Zeig court allowed the insured to proceed against the excess carrier for the amount of loss which exceeded $15,000. See id.[1]; cf. Abberton v. Colonial Penn Ins. Co., 421 So.2d 6, 8 (Fla. 2d DCA 1982)("an injured person is not required to settle his claim for damages for the entire limits of a tort-feasor's liability coverage as a condition precedent to seeking recovery against his own [uninsured motorist] insurer for damages in excess of said coverage."); U.S. Fidelity and Guar. Co. v. State Farm Mut. Auto. Ins. Co., 369 So.2d 410, 411 (Fla. 3d DCA 1979)(where third-party tortfeasor's insurance limits are less than the uninsured motorist coverage, insured is not required to settle his claim for the entire limits of a tortfeasor's liability coverage as a condition precedent to seeking recovery against the insured's own uninsured motorist carrier for damages in excess of the tortfeasor's coverage).
Based on Zeig, we reject the excess carrier's "exhaustion" argument. The excess carrier is, of course, liable only for the amount which exceeds the $10 million primary policy limit.[2]

III.
We agree with Judge Levine that "it is against public policy and contrary to the relationship between a primary insurer and an excess insurer to allow a primary insurer to settle within the primary limits, take an assignment from the insured and then assert a claim against the excess insurer." Order at 2 (citation omitted).
The primary carrier relies on Hartford Cas. Ins. Co. v. Argonaut-Midwest Ins. Co., 854 F.2d 279 (7th Cir.1988), in support of its claim that the assignment was valid. In Hartford, a patient sued a hospital, doctor, and other individuals for medical malpractice. The hospital's insurer refused to defend the doctor. The defendants were later found jointly and severally liable for $9 million. The doctor's personal insurance policy provided only $1 million in coverage. His insurer voluntarily paid an additional $1 million to the eventual settlement of the case. In return, the doctor assigned his claim against the hospital's insurer to his personal insurer (for the hospital's insurer's failure to provide coverage to the doctor). The court found the assignment valid and commended the insurer for contributing more than its share in order to resolve the suit. The Hartford case is considerably different from this case. There, the insurer paid $1 million in excess of its policy limits and then sought the assignment. In that circumstance, the Hartford court determined that the assignment was valid.
Here, however, the primary carrier did not pay in excess of its limits. Rather, it paid less than its limits and then proceeded to negotiate for an assignment of the insured's claim against the excess insurer.
When a primary carrier determines that the insured's loss is in excess of the primary limit, the duty of the primary carrier is to pay its insured and allow the insured to go forward with its claims against the excess carrier. Here, there is no question that at the time it was negotiating a settlement with its insured, the *1001 primary carrier had reached the conclusion that the insured had a viable claim against the excess carrier because it specifically negotiated for an assignment of that claim at the time of the settlement. This was a breach of duty to the insured and apparently an attempt to shift the loss from the primary carrier to the excess. The trial court properly invalidated the assignment.
Affirmed.
NOTES
[1] We recognize that the Zeig ruling has been criticized. See Greenwald, Partial Settlements by Primary Insurers, A Critique, 29 Tort & Ins. L.J. 555 (1994); Bower, Partial Settlements by Primary Insurers, The Law, 29 Tort & Ins. L.J. 536 (1994). Nonetheless, we find the Second Circuit's reasoning in Zeig sound.
[2] The insured cannot seek recovery from the excess carrier of the gap between the $10 million primary limit and the $9.85 million settlement.